**Case No. 25-5173**

---

# United States Court Of Appeals
## FOR THE SIXTH CIRCUIT

---

VICTORY GLOBAL, LLC

*Appellant*

v.

FRESH BOURBON LLC

*Appellee*

**On Appeal from the United States District Court for the
Eastern District of Kentucky, Case No. 5:21-cv-00062**

---

**BRIEF OF APPELLANT, VICTORY GLOBAL, LLC**

---

Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 W. Vine Street, Suite 1700
Lexington, KY  40507
Phone:  (859) 899-8704
Facsimile: (844) 670-6009
bjohnson@dickinsonwright.com
lmayfield@dickinsonwright.com
*Counsel for Appellant
Victory Global, LLC*

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND FINANCIAL INTEREST

Pursuant to Sixth Circuit Rule 26.1, Appellant, Victory Global, LLC d/b/a/ Brough Brothers ("Brough Brothers"), makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation? **No.**

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  **No.**

*/s/ Brian M. Johnson*
*Counsel for Appellant, Victory Global, LLC*

-ii-

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ....................................................................................... ii

TABLE OF CONTENTS .................................................................... iii

TABLE OF AUTHORITIES ................................................................v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... vii

INTRODUCTION ...........................................................................1

STATEMENT OF ISSUES .................................................................2

STATEMENT OF JURISDICTION .........................................................2

STATEMENT OF THE CASE ..............................................................3

    I.     IN 2020, BROUGH BROTHERS BECAME THE FIRST AFRICAN AMERICAN OWNED DISTILLERY IN KENTUCKY. ...........................................................................3

    II.    FRESH BOURBON DID NOT BECOME A DISTILLERY UNTIL 2022. ...........................................................................5

    III.   FRESH BOURBON CONCEDES BROUGH BROTHERS IS THE FIRST AFRICAN-AMERICAN OWNED DISTILLERY IN KENTUCKY. ...........................................................................7

    IV.   FRESH BOURBON'S FALSE ADVERTISEMENTS, THE LAWSUIT, AND THE COURT'S SUMMARY JUDGMENT OPINION. ...........................................................................8

SUMMARY OF ARGUMENT ...............................................................12

ARGUMENT ................................................................................13

    I.     STANDARD OF REVIEW. ...........................................................13

    II.    FRESH BOURBON WAS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY ON ITS LANHAM ACT CLAIM. ...........................................................................14

          A.   THE STATEMENTS IN ISSUE ARE LITERALLY FALSE. ...................15

              i.    The representations in the Lex 18 News article are false when read as a whole ...........................17

              ii.   Fresh Bourbon was the "first black-owned distillery in Kentucky." ...................................18

      iii.    Fresh Bourbon is the "[f]irst black-owned bourbon distillery coming to downtown Lexington"....................20

      iv.    "There had been no African Americans producing bourbon that weren't slaves," and Fresh Bourbon is "the first bourbon developed grain to glass by African Americans in the state of Kentucky."...............22

      v.    Fresh Bourbon employed Kentucky's "first African American Master Distiller in Kentucky since slavery."...............................................27

      vi.    Taken Together, Fresh Bourbon's Statements are Literally False by Necessary Implication. .....................28

    B.    BECAUSE THE STATEMENTS ARE LITERALLY FALSE, DECEPTION IS PRESUMED. ........................................................29

    C.    THE FALSE STATEMENTS ARE MATERIAL. ...............................29

  III.    BROUGH BROTHERS IS ENTITLED TO A TRIAL ON DAMAGES. ...............................................................................35

CONCLUSION....................................................................................36

CERTIFICATE OF COMPLIANCE....................................................38

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............39

CERTIFICATE OF SERVICE ...........................................................40

# TABLE OF AUTHORITIES

**Cases**

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc*., 185 F.3d 606, 619 (6th Cir. 1999) ..... 14, 15, 16, 29, 33

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave*., 284 F.3d 302 (1st Cir. 2002) ........................................................................................ passim

*Clorox Co. v. Proctor & Gamble Commercial Co*., 228 F.3d 24, 35 (1st Cir. 2000) ...............................................................................................15, 32

*Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 149 (6th Cir. 1995) ....................13

*Innovation Ventures, LLC v. N.V.E., Inc*., 694 F.3d 723, 735–36 (6th Cir. 2012) .............................................................................................................15

*Johnson & Johnson – Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc*., 19 F.3d 125, 129 (3rd Cir. 1994).................................................16

*Nat'l Basketball Ass'n v. Motorola, Inc*., 105 F.3d 841, 855 (2d Cir.1997)...........32

*Newborn Bros. Co., Inc. v. Albion Eng'ing Co*., 481 F. Supp.3d 312, 349 (D.N.J. 2020)....................................................................................................20

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*., 290 F.3d 578, 586 (3d Cir. 2002) ..........................................15, 29

*Pride v. BIC Corp*., 218 F.3d 566, 575 (6th Cir. 2000)........................................13

*SharkNinja Operating LLC v. Dyson Inc*., 200 F.Supp.3d 281, 289 (D. Mass. 2016) ............................................................................................................35

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ............................................................................................................17

*Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 158 (2d Cir. 2007) .......................................................................................................15, 29

*United Fabricare Supply Co., Inc*., No. CV-12-3755-MWF, 2012 WL 2449916, *3 (C.D Cal. June 27, 2012) ...........................................................20

*Wysong Corporation v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018) ........................................................................................................29

## Rules

Federal Rules of Appellate Procedure 3 and 4 ........................................................2

Rule 56 ......................................................................................................35

Rule 56(c)..................................................................................................13

## Regulations

27 C.F.R. § 19.1 ........................................................................................24

27 C.F.R. § 1.21(a).....................................................................................24

## Statutes

15 U.S.C. § 1225(a) .............................................................................. passim

15 U.S.C. § 1121 ..........................................................................................2

28 U.S.C. § 1338 ..........................................................................................2

28 U.S.C. § 1291 ..........................................................................................2

KRS 241.010(27) .......................................................................................24

KRS 241.080..............................................................................................24

15 U.S.C. § 1117(a) ...................................................................................36

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

In light of the mixed questions of law and fact presented in this appeal, Brough Brothers believes oral argument would assist the Court in resolving the issues.

## **INTRODUCTION**

This appeal presents a number of issues regarding the Lanham Act, perhaps the most important of which is whether statements should be considered in a vacuum and without context, as the District Court did, or whether they should be considered in the context of one another as part of an overall marketing scheme. The District Court analyzed each statement in issue separately and without regard to its role in the Appellee's marketing campaign, determining for various incorrect reasons that the Appellee did not violate the Lanham Act. Had the District Court properly considered the statements in context with one another, the only conclusion the court could have reached is that Appellee did, in fact, violate the Lanham Act through a series of false statements.

**STATEMENT OF ISSUES**

1.     Whether the District Court erred in denying Brough Brothers' motion for partial summary judgment against Appellee, Fresh Bourbon LLC ("Fresh Bourbon"), as to liability under the Lanham Act by determining the statements in issue were not literally false and that Brough Brothers had not proven deception or that the statements were material.

2.     Whether the District Court erred in granting Fresh Bourbon summary judgment against Brough Brothers on its claim for false advertising under the Lanham Act for the same reasons noted above.

**STATEMENT OF JURISDICTION**

The District Court had original subject matter jurisdiction over Brough Brothers' Lanham Act claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

On January 31, 2025, the District Court granted summary judgment in favor of Fresh Bourbon on all counts and entered a Judgment dismissing Brough Brothers' claims.[1]  The Judgment states that it "is FINAL and APPEALABLE."[2] On February 28, 2025, Brough Brothers timely filed a notice of appeal of the Judgment pursuant to Federal Rules of Appellate Procedure 3 and 4.[3] Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] Opinion and Order, R. 114, Page ID## 2495-2512.
[2] Judgment, R. 115, Page ID# 2513.
[3] Notice of Appeal, R. 116, Page ID## 2514-15.

2

**STATEMENT OF THE CASE**

I.    **IN 2020, BROUGH BROTHERS BECAME THE FIRST AFRICAN AMERICAN OWNED DISTILLERY IN KENTUCKY.**

In 2013, brothers Victor and Bryson Yarbrough organized Victory Global LLC with the goal of being the first black owners of a bourbon distillery in Kentucky.[4] At that time, the Yarbrough brothers began developing a "vertically integrate[d]" company that addresses every level of the bourbon distillation process, including growing raw materials, testing flavor profiles, creating a brand, and operating a distillery.[5]  In the initial stages, Brough Brothers sourced bourbon fitting its flavor profile through third-parties.[6]  Brough Brothers then located a bottler.[7]  Brough Brothers took all of these steps before Sean and Tia Edwards, Fresh Bourbon's owners, even came up with the idea for Fresh Bourbon.[8]

On August 17, 2018, the U.S. Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau ("TTB") issued a Basic Permit (under the U.S. Alcohol Administration Act) to Brough Brothers to distill, produce, and bottle spirits.[9]  After obtaining its TTB Basic Permit, Brough Brothers officially registered that it was doing business under the name "Brough Brothers

---

[4] Complaint, R. 1, ¶ 12, Page ID# 3; Answer, R. 9, ¶ 7, Page ID# 31; Deposition of Victor Yarbrough, R. 73-5, p. 10, Page ID# 1133.

[5] Deposition of Victor Yarbrough, R. 73-5, pp. 15-16, Page ID## 1136-37.

[6] Deposition of Victor Yarbrough, R. 73-5, p. 18, Page ID# 1138.

[7] Deposition of Victor Yarbrough, R. 73-5, pp. 18-19, Page ID## 1138-39.

[8] Deposition of Tim Knittel, R. 73-3, p. 50, Page ID# 1107.

[9] TTB Permit, R. 73-6, Page ID## 1151-52.

3

Distillery."[10] Likewise, in 2018, Brough Brothers registered as a "brand" and obtained approval for its label.[11] Subsequently, Brough Brothers signed a distribution agreement for its product, initially within Kentucky, but later across approximately 42 states.[12] As Victor Yarbrough explained in his deposition, it was important to move quickly because "there's a big push for African American-owned" spirits brands.[13] Each of these steps beginning in 2013 was a necessary part of implementing Brough Brothers' vertical integration strategy for distilling its own bourbon.

Effective September 30, 2020, the Kentucky Public Protection Cabinet Alcoholic Beverages Control ("KABC") licensed Brough Brothers as a Distiller Class B and issued a Sampling License.[14] Effective September 9, 2020, the Louisville-Jefferson County Metro Government Department of Codes & Regulations issued an Alcoholic Beverage Distiller License to Brough Brothers.[15] On December 31, 2020, Brough Brothers Distillery filled its first bourbon barrel at its facility in Louisville, Kentucky.[16]

---

[10] Deposition of Victor Yarbrough, R. 73-5, p. 14, Page ID# 1135.
[11] Deposition of Victor Yarbrough, R. 73-5, p. 20, Page ID# 1140.
[12] Deposition of Victor Yarbrough, R. 73-5, p. 21, Page ID# 1141.
[13] Deposition of Victor Yarbrough, R. 73-5, p. 13, Page ID# 1134.
[14] KABC License No. 056-DTB-169578, R. 73-7, Page ID## 1154-62.
[15] Louisville Metro DCR Distiller's License No. LIC-ABL-20-00099, R. 73-8, Page ID## 1164-73.
[16] Deposition of Victor Yarbrough, R. 73-5, pp. 23-24, Page ID## 1142-43.

## II.    FRESH BOURBON DID NOT BECOME A DISTILLERY UNTIL 2022.

It is undisputed that Fresh Bourbon did not obtain the required licenses to operate a distillery until October 2022 – two years after Brough Brothers had obtained its licenses and 22 months after Brough Brothers had filled its first barrel.[17]  Prior to October 2022, Fresh Bourbon had only been involved in a process known as contract distilling.  Specifically, in 2018, Fresh Bourbon engaged in a relationship with Buchanan Griggs Inc. d/b/a Hartfield & Co. ("Hartfield") through which bourbon produced by Hartfield was sold under the Fresh Bourbon label.[18]

Notably, Fresh Bourbon did not distill, sell, or distribute the bourbon produced by Hartfield.  Instead, under this relationship, Fresh Bourbon merely told Hartfield how much bourbon was needed, Hartfield produced and sold the bourbon to distributors, and then Hartfield funneled the money from the distributors back to Fresh Bourbon.[19]  According to Hartfield's founder and master distiller, Andrew Buchanan, Fresh Bourbon "couldn't technically buy the bourbon because [it]

---

[17] Louisville Metro DCR Distiller's License No. LIC-ABL-20-00099, R. 73-8, Page ID## 1164-73; Deposition of Victor Yarbrough, R. 73-5, pp. 23-24, Page ID## 1142-43; Fresh Bourbon's Response to Brough Brothers' Interrogatory No. 10, R. 73-10, Page ID# 1186.

[18] Deposition of Sean Edwards, (Dec. 1, 2023), p. 37, R. 73-1, Page ID# 1065.

[19] Deposition of Andrew Buchanan, p. 48, R. 80-2, Page ID# 1795.

5

didn't have a license to buy the bourbon[.]"[20] The bourbon produced for Fresh Bourbon was sold under Hartfield's permit number and expressly stated on each label that it was distilled and bottled by Hartfield.[21]  Hartfield bought all of the grain, yeast, barrels, and water for the bourbon ultimately sold under the Fresh Bourbon label.[22]

According to Mr. Buchanan, Fresh Bourbon's owners had no knowledge or ability to distill their own bourbon, and they did not possess the required licenses to do so.[23] Accordingly, when Mr. Buchanan began working with the people at Fresh Bourbon to teach them the distilling process, he conducted every step of the process for them.[24]  Mr. Buchanan also began training a Fresh Bourbon employee, Mike Adams, on the distillation process, but there is no evidence that Mr. Adams ever became a master distiller in any sense of that term.  In fact, the evidence shows Mr. Adams had no skill in distilling.[25] Mr. Adams was, instead, a full-time bank employee with an interest in spirits who went to work for Fresh Bourbon.[26] According to Fresh Bourbon, Mr. Adams may have illegally brewed alcohol at

---

[20] Deposition of Andrew Buchanan, p. 48, R. 80-2, Page ID# 1795.

[21] Deposition of Andrew Buchanan, pp. 50-51, R. 80-2, Page ID## 1797-98.

[22] Deposition of Andrew Buchanan, pp. 57-58, R. 80-2, Page ID## 1800-01.

[23] Deposition of Andrew Buchanan, pp. 40, 48-49, 54, R. 80-2, Page ID## 1794-96, 1799.

[24] Deposition of Andrew Buchanan, pp. 54, 57-60, R. 80-2, Page ID## 1799-1803.

[25] Deposition of Andrew Buchanan, pp. 79-80, R. 80-2, Page ID## 1813-14.

[26] Deposition of Andrew Buchanan, pp. 79-80, R. 80-2, Page ID## 1813-14; Michael Veach Report, p. 4, R. 73-2, Page ID# 1103.

6

home, but he knew next-to-nothing about the distilling process before Mr. Buchanan started teaching him.[27]  Mr. Adams did not own a distillery, nor did he have any experience working for another distillery prior to receiving training from Mr. Buchanan.[28]

## III.   FRESH BOURBON CONCEDES BROUGH BROTHERS IS THE FIRST AFRICAN-AMERICAN OWNED DISTILLERY IN KENTUCKY.

As discussed above, Brough Brothers achieved all of the relevant milestones for opening its own distillery before Fresh Bourbon did. Indeed, Fresh Bourbon conceded as much during discovery:

> Q. You agree that you're not the first African American owned distillery in the state of Kentucky, correct?
>
> A Yes.[29]
>
> ***
>
> Q. [Y]ou agree that Brough Brothers distilled bourbon in its own facility before Fresh Bourbon?
>
> A Yes.
>
> Q. You agree that Victory Global as a company was registered before Fresh Bourbon was registered?
>
> A Yes.
>
> Q. Do you agree that Brough Brothers had the federal license to operate a distillery before Fresh Bourbon did?

---

[27] Deposition of Sean Edwards (Dec. 7, 2023), p. 55, R. 80-5, Page ID# 1851.

[28] Deposition of Andrew Buchanan, pp. 79-80, R. 80-2, Page ID## 1813-14; Michael Veach Report, p. 4, R. 73-2, Page ID# 1103.

[29] Deposition of Sean Edwards, (Dec. 7, 2023), pp. 100-101, R. 73-1, Page ID## 1095-96.

A Yes.

Q. Do you agree that Brough Brothers had a state permit to operate a distillery before Fresh Bourbon did?

A Yes.

Q. And then, do you agree that Brough Brothers had the local license to operate a distillery before Fresh Bourbon did?

A. Yes.[30]

## IV.    FRESH BOURBON'S FALSE ADVERTISEMENTS, THE LAWSUIT, AND THE COURT'S SUMMARY JUDGMENT OPINION.

Despite being the second black-owned bourbon distillery in Kentucky, Fresh Bourbon has repeatedly and misleadingly marketed itself as the first either by directly making or republishing the following statements:

1.      On February 26, 2020, the Kentucky Senate adopted Kentucky Senate Resolution No. 176 ("Resolution"), which stated "The Fresh Bourbon Distilling Company is considered to be the first black-owned bourbon distillery in Kentucky" and acknowledged "the importance of this being the first black-owned distillery in Kentucky."[31]  After the passage of the Resolution, Fresh Bourbon republished it in numerous advertisements and promotions for its products, including on its

---

[30] Deposition of Sean Edwards, (Dec. 7, 2023), pp. 38-40, R. 73-1, Page ID## 1089-91.
[31] Resolution, R. 73-16, Page ID# 1232.

bottles.[32]   In their depositions, Mr. and Mrs. Edwards denied prior knowledge of the content of the Resolution and claimed they did not contribute to its language:

> Q.    Well, actually, this is a lawsuit against you about your claims that you were the first African American distiller and then you've also claimed you're the first African Americans to own a distillery, so I'm talking about distilleries.
>
> A.    We-we—ok. I would say that we did not say that claim. We – we've - we've never voiced that that we're the first African American distillery. The state said that.
>
> Q.    And you have included that resolution on your website to the public, correct?
>
> A.    Yes.[33]
>
> ***
>
> Q.    Okay. What about being the first? Was being the first to do something part of your vision for Fresh Bourbon in 2017?
>
> A.    We didn't know we were the first until the state recognized us as the first.[34]
>
> ***
>
> Q.    Do you know who drafted the language of this resolution?
>
> A.    I do not know.[35]

---

[32] Deposition of Tia Edwards, pp. 79, 83, R. 73-17, Page ID## 1238, 1242 (claiming the resolution was not part of marketing); Deposition of Sean Edwards (Dec. 1, 2023), p. 86, R. 73-1, Page ID# 1083 (admitting the resolution was published to the public on Fresh Bourbon's website).

[33] Deposition of Sean Edwards (Dec. 1, 2023), p. 86, R. 73-1, Page ID# 1083.

[34] Deposition of Tia Edwards, p. 62, R. 73-17, Page ID# 1235.

9

These representations, however, are refuted by documents demonstrating that Mr. Edwards proposed the language for the Resolution, despite being unable to truthfully claim that Fresh Bourbon was the first black-owned distillery in Kentucky.  For example, in response to a subpoena to Fresh Bourbon's expert, Tim Knittel, text messages between Sean Edwards and Mr. Knittel were produced demonstrating that, in contradiction to their testimony, the Edwards pre-drafted the language used in the Resolution.

> Mr. Knittel: When you get a chance, I wanted your thoughts on the citation that we will get from the state and what it should say. Fresh Bourbon Distilling Company in Lexington, Kentucky[.] Founded in 2017, is hereby recognized as the first African American owned Company to produce Bourbon in the State of Kentucky with an African American Distiller Since Slavery.
>
> ***
>
> Mr. Edwards: So yeah, I think that language works well. They might be sent [sic] to get first African American owned Distiller in KY[.][36]

2. On its website, Fresh Bourbon adopted and republished a Lex 18 News article titled "First African American-owned distillery coming to Lexington."[37]  Among other things, the article represents that the "Lexington couple [Fresh Bourbon's owners] are the first African-Americans to distill bourbon

---

[35]  Deposition of Tia Edwards, p. 73, R. 73-17, Page ID# 1237.

[36] Text message exchange (Jan. 28, 2020), R. 73-18, Page ID# 1247-48.

[37] Lex 18 News article, R. 73-11, Page ID## 1196-204; Fresh Bourbon's website, R. 73-12, Page ID# 1207.

in Kentucky."[38] Fresh Bourbon provided the following quote in the same article: "As we went through the process we found out there were no African American distilleries in the state of Kentucky. There had been no African Americans producing bourbon that weren't slaves."[39]   As of the summary judgment proceedings below, the article was still published on Fresh Bourbon's website, where it remains today.[40]

3.      On its X social media account, Fresh Bourbon advertises its product as being "the first bourbon developed grain to glass by African Americans in the state of Kentucky."[41]

4.      Fresh Bourbon has also represented that it employed Kentucky's "first African American Master Distiller [Mr. Adams] in Kentucky since slavery."[42]

Based on these and other false statements, Brough Brothers filed a Complaint on March 1, 2021, asserting claims for false advertising pursuant to the Lanham Act, common law unfair competition under Kentucky law, unfair and deceptive trade practices under Kentucky statutory law, and tortious interference

---

[38] Lex 18 News article, R. 73-11, Page ID# 1197.
[39] Lex 18 News article, R. 73-11, Page ID# 1197.
[40] Fresh Bourbon's website, R. 73-12, Page ID# 1207 (date stamp 4/30/24).
[41] X social media post, R. 73-13, Page ID# 1212.
[42] Fresh Bourbon's Motion for Summary Judgment, R. 70-1, Page ID## 722-23.

with contractual and business relationships and expectancies.[43] This appeal only addresses the Lanham Act claim.

On April 29, 2024, Fresh Bourbon moved the District Court for summary judgment on all of Brough Brothers' claims.[44] The next day, Brough Brothers filed a cross-motion for partial summary judgment with respect to liability on its Lanham Act claim.[45] On January 31, 2025, the District Court granted summary judgment in favor of Fresh Bourbon on all counts and entered a Judgment dismissing Brough Brothers' claims.[46]

## SUMMARY OF ARGUMENT

In its summary judgment opinion, the District Court considered each of Fresh Bourbon's statements in isolation and failed to place all of the statements in context with one another. Had the District Court conducted its analysis properly, the only conclusion it could have reached would have been that Fresh Bourbon violated the Lanham Act by tying together numerous false and misleading statements as part of its overall marketing scheme. Instead, the District Court determined each of the statements, when considered separately and in a vacuum, was not "literally false" for purposes of deception under the Lanham Act.

---

[43] Complaint, R. 1, Page ID## 1-11.

[44] Fresh Bourbon's Motion for Summary Judgment, R. 70-1, Page ID## 717-30.

[45] Brough Brothers' Motion for Partial Summary Judgment, R. 73, Page ID## 1034-60.

[46] Opinion and Order, R. 114, Page ID## 2495-2512; Judgment, R. 115, Page ID# 2513.

12

The District Court further erred in holding that Brough Brothers failed to demonstrate Fresh Bourbon's false statements were material.  In doing so, the District Court erroneously determined Brough Brothers had not presented evidence that the false statements had influenced a consumer's buying decision.  Under well-established Sixth Circuit law, however, Brough Brothers was not required to show actual influence over a consumer; rather, Brough Brothers was only required to demonstrate that the statements in issue were *likely* to influence a consumer's purchasing decision.  As discussed herein, the undisputed material facts, including Fresh Bourbon's own testimony and statements, make clear that being the "first" was not only material, but was at the very heart of the Fresh Bourbon brand.

## ARGUMENT

### I.    STANDARD OF REVIEW.

On appeal, the Court "reviews a grant of summary judgment *de novo*, using the same Rule 56(c) standard as the district court." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Under Rule 56(c), "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" *Pride v. BIC Corp.*, 218 F.3d 566, 575 (6th Cir. 2000) (quoting Rule 56(c)). "A court ruling on a motion for summary judgment must consider all the

13

facts in the light most favorable to the nonmovant and must give the nonmovant the benefit of every reasonable inference." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 619 (6th Cir. 1999).

## II.   FRESH BOURBON WAS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY ON ITS LANHAM ACT CLAIM.

To prevail on a claim for false advertisement under the Lanham Act, Brough Brothers was required to demonstrate: (1) Fresh Bourbon "use[d] . . . false or misleading representations of fact" concerning the bourbon it sells; (2) the false statements actually deceived or had a tendency to deceive a substantial portion of the intended audience; (3) the false statements are "material in that [they] will likely influence the deceived consumer's purchasing decisions"; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the false statements and harm to Brough Brothers. *Am. Council of Certified Podiatric Physicians & Surgeons,* 185 F.3d at 613.

Fresh Bourbon admitted that Brough Brothers was incorporated before Fresh Bourbon, obtained the licensure necessary to own and operate a distillery before Fresh Bourbon, bought distilling equipment before Fresh Bourbon, and actually began distilling its own spirits before Fresh Bourbon.[47]   Based on a comparison of

---

[47] Deposition of Sean Edwards, (Dec. 7, 2023), pp. 38-40, 100-101, R. 73-1, Page ID## 1089-91, 1096-97.

14

these undisputed facts and the statements in issue, the District Court should have determined that Fresh Bourbon engaged in false advertising in violation of the Lanham Act by holding itself out as the first black-owned distillery in Kentucky. Alternatively, the District Court should have denied Fresh Bourbon's motion for summary judgment and permitted the parties to proceed to trial on Brough Brothers' Lanham Act claim.

## A. THE STATEMENTS IN ISSUE ARE LITERALLY FALSE.

Under the Lanham Act, a misleading statement can be either: (1) literally false; or (2) true or ambiguous but "misleading or confusing" nonetheless. *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 613. "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735–36 (6th Cir. 2012) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000)). "If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false . . ." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (citing *Novartis*, 290 F.3d at 586-87); *see also Johnson & Johnson –*

15

*Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3rd Cir. 1994) ("A determination of literal falsity rests on an analysis of the message in context."). Indeed, Fresh Bourbon itself conceded that placing statements in context is critically important, arguing: "In law, as in all of life, context matters. Facts and statements taken out of context can mean anything or nothing."[48] Fresh Bourbon was correct in making that statement, but incorrect in contending it supported Fresh Bourbon's position. Here, by "necessary implication," the various statements made by Fresh Bourbon were literally false. Fresh Bourbon's entire marketing campaign consisted of publishing a series of statements that, when placed in context with one another, would lead any reasonable person to believe Fresh Bourbon was the first black-owned distillery in Kentucky, when the evidence instead makes clear it was not. *See Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 615, n. 2 ("the initial determination concerning whether a statement is ambiguous is a matter of law, while the determination as to whether facts exist so as to justify the statement is a question of fact").

---

[48] Fresh Bourbon's Response Motion for Partial Summary Judgment, R. 77, Page ID# 1348.

16

### i. The representations in the Lex 18 News article are false when read as a whole.

The appropriate means of evaluating whether Fresh Bourbon's statements were literally false is to consider all of them together, rather than each of them in a vacuum. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("[I]n determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose and mouth separately and in isolation from each other.") (citation omitted). The District Court, however, did not even consider separate statements in the same publication in context, let alone statements in the context of the overall marketing scheme, but instead addressed each as if it were the only statement that had been made.

With regard to a Lex 18 News article, for example, the District Court separately considered each statement without even putting those statements in context with one another. In this article, titled "First African American-owned distillery coming to Lexington," several statements are made that, when read together, unambiguously convey a false and misleading message: (1) the "Lexington couple [Fresh Bourbon's owners] are the first African-Americans to distill bourbon in Kentucky;" (2) "[a]s [Fresh Bourbon] went through the process [Fresh Bourbon] found out there were no African American distilleries in the state

17

of Kentucky" and (3) "[t]here had been no African Americans producing bourbon that weren't slaves" before Fresh Bourbon.[49]

But, as noted above, Fresh Bourbon conceded that: (1) it could not have distilled bourbon until it was properly licensed to do so; (2) Brough Brothers began operating a distillery before Fresh Bourbon did; and (3) Brough Brothers was engaged in the production of bourbon before Fresh Bourbon was.[50] Thus, when considering Fresh Bourbon's statements both in context with one another and in comparison with its testimonial admissions, it is beyond dispute that Fresh Bourbon's marketing campaign based on being "first" was literally false and misleading.

Further, as discussed below, each of the statements is misleading even when considered separately.

### ii. Fresh Bourbon was the "first black-owned distillery in Kentucky."

The District Court determined that Fresh Bourbon's repeated citation, reproduction, and dissemination of the Resolution stating that Fresh Bourbon "is considered to be the first black-owned bourbon distillery in Kentucky" was not actionable because it was not literally false to state that Fresh Bourbon *is*

---

[49] Lex 18 News article, R. 73-11, Page ID# 1197.
[50] Deposition of Sean Edwards, (Dec. 7, 2023), pp. 38-40, 100-101, R. 73-1, Page ID## 1089-91, 1096-97.

18

*considered by the Commonwealth of Kentucky* to be the first black-owned distillery in Kentucky.[51]

While the Resolution stated the Commonwealth considers Fresh Bourbon the "first," the District Court swept one glaring issue under the rug: Mr. Edwards proposed the false language contained in the Resolution.[52] Thus, the District Court effectively held it was not deceptive or false for Fresh Bourbon to repeatedly republish and stand by an untrue statement contained in the Resolution that Fresh Bourbon helped craft and knew was false.

Moreover, even if Fresh Bourbon's owners had not participated in crafting the Resolution, they necessarily must have provided the false information to the Resolution's author – there is no other way the author would have known to include the false information in the Resolution. And, even if one were to assume incorrectly that Fresh Bourbon did not participate in creating the misleading Resolution, it is undisputed that Fresh Bourbon chose to republish the statement made through the Resolution, leaving an unambiguous impression on a reader that Fresh Bourbon is the first black-owned distillery in Kentucky, when clearly it is not.

It is important to note here that the Lanham Act does not require that a false statement be initially made by the defendant. The Lanham Act instead prohibits

---

[51] Opinion and Order, R. 114, Page ID# 2502.
[52] Text message exchange (Jan. 28, 2020), R. 73-18, Page ID# 1247-48.

19

the "use" of a false statement in commerce regardless of whether the defendant made the statement or republished a statement made by a third party that the defendant knew to be false. *See*, *e.g.*, *Newborn Bros. Co., Inc. v. Albion Eng'ing Co.*, 481 F. Supp.3d 312, 349 (D.N.J. 2020) (defendant liable under the Lanham Act for arranging for third party to disseminate false statements); *United Fabricare Supply Co., Inc.*, No. CV-12-3755-MWF, 2012 WL 2449916, *3 (C.D Cal. June 27, 2012) (rejecting defendant's argument that Lanham Act liability cannot accrue as a result of republication of a third party's false statement). Because Fresh Bourbon arranged for false statements to be made by third parties, knew the statements were false, and subsequently ratified the false statements by republishing them on its website, Fresh Bourbon "used" the false statements in violation of the Lanham Act. The District Court erred in holding that a false statement must initially be uttered by a defendant to give rise to liability, as a defendant may be equally liable for "using" a false statement made a third party with the knowledge it is false.

### iii. Fresh Bourbon is the "[f]irst black-owned bourbon distillery coming to downtown Lexington."

The District Court determined the representation that the "first black-owned bourbon distillery coming to Lexington" (and other similar statements) was not false because Brough Brothers presented no evidence that another black-owned

20

distillery was in Lexington before Fresh Bourbon.[53]  In doing so, the District Court incorrectly interpreted the term "coming to" in a vacuum when the full context reveals the misleading nature of the statement.

Indeed, in the article titled "First African American-owned distillery coming to Lexington," which Fresh Bourbon adopted and published on its website, the representation is made that the "Lexington couple [Fresh Bourbon's owners] are the first African-Americans *to distill bourbon in Kentucky*."[54]  The article further states that "[Fresh Bourbon's owners] have already begun producing their bourbon in Paris, Kentucky, until they can start distilling in their *Lexington location* and hope to have Fresh Bourbon."[55]  Thus, reading these statements together, it is clear that the message conveyed to the public was that the first black-owned distillery in Kentucky (Fresh Bourbon) was starting another location in Lexington – *i.e.*, coming to Lexington.  This message, of course, is false because Brough Brothers is plainly the first African American owned distillery in Kentucky, as Fresh Bourbon conceded.

---

[53] Opinion and Order, R. 114, Page ID# 2503.
[54] Lex 18 News article, R. 73-11, Page ID# 1197 (emphasis added).
[55] Lex 18 News article, R. 73-11, Page ID# 1197 (emphasis added).

21

> **iv.    "There had been no African Americans producing bourbon that weren't slaves," and Fresh Bourbon is "the first bourbon developed grain to glass by African Americans in the state of Kentucky."**

The District Court determined the statements that Fresh Bourbon representatives were the first African Americans, other than slaves, to "produce" bourbon and that Fresh Bourbon was the first bourbon "developed" grain to glass by African Americans in Kentucky are, at most, ambiguous.[56] As explained herein, however, the representation in the Lex 18 News article that there had been no African Americans producing bourbon who were not slaves is unambiguous when considering other statements contained in the same article, *i.e.* that Mr. and Mrs. Edwards were "the first African-Americans to distill bourbon in Kentucky" and "there were no African American distilleries in the state of Kentucky" before Fresh Bourbon.[57]  Fresh Bourbon, of course, has argued Brough Brothers did not come forward with proof that these statements were false.[58]  Ironically, the falsity of the statements is proven by a separate statement Mr. Edwards made, admitting

---

[56] Opinion and Order, R. 114, Page ID## 2503-04.
[57] Lex 18 News article, R. 73-11, Page ID# 1197.
[58] Fresh Bourbon's Reply in Support of Motion for Summary Judgment, R. 81, Page ID# 1858.

"[African Americans] *have played a role* in the bourbon industry since slavery, and traditionally have not operated from an owner perspective."[59]

Regardless of Mr. Edwards' separate concession, however, Fresh Bourbon's statements that no other African Americans had "produced" bourbon in Kentucky since slavery are false even when the statements are considered separately. In concluding otherwise, the District Court engaged in a two-step analysis in which it erred both legally and factually. First, the District Court determined the words "produce" and "develop" are not equivalent to "distilling" bourbon with a license.[60] Second, based on this "distinction," the District Court concluded that, from a factual standpoint, the statements were not literally false because Fresh Bourbon could have been the first black-owned company to "produce" or "develop" bourbon (without a license) in connection with the Hartfield arrangement, whereas Brough Brothers is the first African American owned company to legally "distill" bourbon in Kentucky.[61]

The District Court's determination that "producing" and "developing" bourbon carry different meanings than distilling it is perplexing, particularly given Fresh Bourbon's references to "distill" and "distillery" in the Lex 18 News article – the same article in which Fresh Bourbon claimed no African Americans had

---

[59] Brough Brothers' Motion for Partial Summary Judgment, R. 73-14, Page ID# 1224 (emphasis added).
[60] Opinion and Order, R. 114, Page ID## 2503-04.
[61] Opinion and Order, R. 114, Page ID# 2505.

23

produced bourbon other than slaves.[62]   Regardless of which words are chosen ("make," "produce," or otherwise), the process through which bourbon comes to exist is commonly known as distilling.   Indeed, a "distiller" under the Code of Federal Regulations is a person who "*[p]roduces* distilled spirits" or "*[m]akes* mash, wort, or wash fit for distillation[.]" 27 C.F.R. § 19.1 (emphasis added). Under Kentucky law, a "distiller" is a person "who is engaged in the business of manufacturing distilled spirits[.]" KRS 241.010(27). That is, any person who "makes," "produces," "manufactures," or "distills" a distilled spirit is a "distiller." And a "distiller" cannot legally "distill" liquor without the appropriate licenses and regulatory approvals.   KRS 241.080; 27 C.F.R. § 1.21(a). Thus, either Fresh Bourbon broke these laws or Fresh Bourbon falsely claimed that it made, produced, or distilled bourbon.

Even if "develop" and "produce" could be construed as holding meanings separate from possessing the licensure necessary to distill, the representations would still be untrue.   Regardless of what interpretation is applied to the term "produce," it was demonstrably false for Fresh Bourbon to claim there had been no African Americans producing bourbon that were not slaves.   Perhaps the most glaring issue with the District Court's reasoning is even if Fresh Bourbon "produced" or "developed" bourbon through its contract with Hartfield, it would

---

[62] Lex 18 News article, R. 73-11, Page ID# 1197.

24

have nonetheless done so after Brough Brothers. Indeed, applying the District Court's logic – that "produce" and "develop" can encompass many aspects of the bourbon production process – the Yarbrough brothers would have been the first to "develop" and "produce" bourbon in 2013 when they began developing their business years before Mr. and Mrs. Edwards did.[63]

Further applying its strained interpretation to the facts, the District Court relied on "evidence" that Fresh Bourbon's representatives "produced" or "developed" bourbon at the Hartfield facility before Brough Brothers began making it at its own distillery.[64] According to Mr. Buchanan, however, Fresh Bourbon merely told Hartfield how much bourbon was needed, Hartfield would produce and sell the bourbon to distributors, and then Hartfield would transfer the money from the distributor back to Fresh Bourbon.[65] Mr. Buchanan also made clear that Fresh Bourbon's owners had no knowledge or ability to distill their own bourbon, and he conducted every step of the distilling process for them.[66] Because Fresh Bourbon was not a licensed distiller, the bourbon was sold under Hartfield's permit number and marketed as a Hartfield product.[67]

---

[63] Deposition of Victor Yarbrough, R. 73-5, pp. 15-16, 18-19, Page ID## 1136-39; Deposition of Tim Knittel, R. 73-3, p. 50, Page ID# 1107.

[64] Opinion and Order, R. 114, Page ID# 2503.

[65] Deposition of Andrew Buchanan, p. 48, R. 80-2, Page ID# 1795.

[66] Deposition of Andrew Buchanan, pp. 54, 57-60, R. 80-2, Page ID## 1799-1803.

[67] Deposition of Andrew Buchanan, pp. 50-51, R. 80-2, Page ID## 1797-98.

25

In reality, Fresh Bourbon merely purchased bourbon under contract on Hartfield's license – it did not, by any stretch of the imagination, "produce" or "develop" bourbon "grain to glass" by virtue of its contractual arrangement with Hartfield. Indeed, based on the nature of this relationship, Mr. Veach opined that "it is more accurate to say that the Edwards had bourbon produced for them . . ."[68] Likewise, it is indisputable that Fresh Bourbon was not the distiller of that bourbon, as each bottle of bourbon clearly identified Hartfield as the distiller.[69] Nonetheless, the District Court concluded that the words "produce" and "develop" are ambiguous as to the degree of involvement required and could encompass Fresh Bourbon's contributions to the making of the bourbon sold by Hartfield.[70] Even if the District Court's summary of Fresh Bourbon's involvement were supported by the evidence, and it is not, it remains undisputed that Fresh Bourbon did not produce or develop the Hartfield bourbon on its own (and again, if it did, it necessarily would have been done (i) illegally and (ii) after Brough Brothers was already developing bourbon)). Thus, the statement that Fresh Bourbon was the first bourbon produced and developed by African Americans – without any mention of Hartfield and its master distiller Mr. Buchanan – is clearly a false and misleading statement.

---

[68] Michael Veach Report, p. 4, R. 73-2, Page ID# 1103.
[69] Deposition of Andrew Buchanan, pp. 50-51, R. 80-2, Page ID## 1797-98.
[70] Opinion and Order, R. 114, Page ID# 2503.

26

> **v.**    **Fresh Bourbon employed Kentucky's "first African American Master Distiller in Kentucky since slavery."**

Fresh Bourbon has also falsely and misleadingly advertised that it employed the "first African American Master Distiller in Kentucky since slavery."[71] Fresh Bourbon's advertisement is in reference to Mr. Adams, who supposedly distilled the contract bourbon made for Fresh Bourbon by Hartfield.[72] Mr. Buchanan, however, was the head distiller at Hartfield; Mr. Adams was not.[73] While Mr. Buchanan testified he was training Mr. Adams to become a master distiller for Fresh Bourbon, there is no evidence that Mr. Adams actually was or ever became a master distiller. In fact, the evidence shows Mr. Adams had no experience with distilling bourbon prior to working with Hartfield.[74] He did not own a distillery.[75] He did not have decades of experience.[76] He was a full-time bank employee with an interest in spirits who went to work for Fresh Bourbon.[77]

The District Court nonetheless determined the representations were not false because the term "Master Distiller" is ambiguous or a matter of opinion. Although Brough Brothers' expert, Michael Veach, acknowledged there are no set criteria

---

[71] Fresh Bourbon's Motion for Summary Judgment, R. 70-1, Page ID## 722-23.

[72] Fresh Bourbon's Motion for Summary Judgment, R. 70-1, Page ID## 722-23.

[73] Deposition of Andrew Buchanan, p. 82, R. 80-2, Page ID# 1816.

[74] Deposition of Andrew Buchanan, pp. 79-82, R. 80-2, Page ID## 1813-16.

[75] Deposition of Andrew Buchanan, pp. 79-82, R. 80-2, Page ID## 1813-16. Michael Veach Report, p. 4, R. 73-2, Page ID# 1103.

[76] Deposition of Andrew Buchanan, pp. 79-82, R. 80-2, Page ID## 1813-16.

[77] Deposition of Andrew Buchanan, pp. 79-82, R. 80-2, Page ID## 1813-16.

27

for a master distiller, he made clear the term "typically [means] … someone with 20+ years of experience operating a distillery" or "someone who owns his or her own distillery."[78]   Common sense, ordinary meaning of words, and industry-specific considerations demonstrate that Mr. Adams' distilling qualifications, or lack thereof, are wholly inadequate to qualify him as a "master distiller," particularly within the meaning of the term provided by Brough Brothers' expert. The District Court erred in disregarding Mr. Veach's expert opinions, particularly where Fresh Bourbon did not even attempt to exclude him.

### vi.   Taken Together, Fresh Bourbon's Statements are Literally False by Necessary Implication.

Based on Fresh Bourbon's marketing scheme, the public was necessarily left with the clear impression that Fresh Bourbon was the first black owned distillery in Kentucky.  Any consumer visiting Fresh Bourbon's website would have seen the Resolution incorrectly identifying Fresh Bourbon as the first black owned distillery, references to media statements referring to Fresh Bourbon as the first black owned distillery, and claims that Fresh Bourbon employed the first African Americans since slavery to produce bourbon, including the first black master distiller.  Placed in context with one another as part of the overall marketing scheme, as carefully designed by Fresh Bourbon, no reasonable person could reach any conclusion other than that Fresh Bourbon was the first black owned distillery.

---

[78] Michael Veach Report, p. 3, R. 73-2, Page ID# 1102.

As explained above, it clearly was not – Brough Brothers was. Had the District Court considered the statements contained in Fresh Bourbon's marketing scheme in context, instead of parsing through specific statements and specific words, the only conclusion it could have reached would have been that Fresh Bourbon violated the Lanham Act.

### B. BECAUSE THE STATEMENTS ARE LITERALLY FALSE, DECEPTION IS PRESUMED.

Because Brough Brothers has established Fresh Bourbon's statements are literally false, Brough Brothers need not prove actual deception. *Wysong Corporation v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018)). As stated by this Court, "[w]here statements are literally false, a violation may be established without evidence that the statements actually misled consumers." *American Council of Certified Podiatric Physicians and Surgeons,* 185 F.3d at 613; *Time Warner Cable*, 497 F.3d at 158 (citing *Novartis*, 290 F.3d at 586-87) ("If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required.").

### C. THE FALSE STATEMENTS ARE MATERIAL.

As noted by Brough Brothers' expert, Mr. Veach, Fresh Bourbon's marketing strategy, as misleading as it may be, is not uncommon – many bourbon brands "have attempted to break into the market by marketing themselves as the

'first'[.]"[79] Indeed, Fresh Bourbon itself has recognized the importance of being deemed "first," most notably in an interview with WTVQ in which Mr. Edwards stated "***[t]he story sells the first bottle, what's in it sells the second***."[80]  In an effort to tell this story and distinguish itself in a competitive market, Fresh Bourbon deliberately sought to take advantage of the cultural and economic prestige that comes with being the "first" – the "first" African Americans to produce bourbon that were not slaves, the "first" black-owned distillery in Kentucky coming to downtown Lexington, the "first" bourbon developed grain to glass by African Americans in Kentucky, and the "first" African American-owned distilling company in Kentucky. Fresh Bourbon did not accidentally misrepresent these supposed accomplishments through the use of imprecise language; rather, portraying itself as the "first" was a calculated strategy employed in order to draw customers to a "unique" characteristic of Fresh Bourbon's products.  In fact, according to Fresh Bourbon's own marketing Language Guidelines:

[81]

---

[79] Michael Veach Report, p. 2, R. 73-2, Page ID# 1101.
[80] *Local couple bringing new bourbon experience to Lexington*, WTVQ.com, R. 73-15, Page ID# 1227 (emphasis added).
[81] Fresh Bourbon Language Guidelines, **filed under seal as** *Confidential For Attorney Eyes Only,* R. 73-23, Page ID# 1293.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████.[82]    Moreover,

marketing to African Americans was a fundamental part of Fresh Bourbon's

marketing plan: "Beginning with African Americans, women and millennials Fresh

Bourbon will target these untapped markets in the bourbon industry."[83]

In this respect, *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284

F.3d 302 (1st Cir. 2002), is instructive. In *Cashmere & Camel*, the plaintiffs filed a

lawsuit pursuant to § 43(a) of the Lanham Act, alleging the defendants had falsely

advertised that the products in issue contained 10% cashmere when actually: (1)

they contained less than 1% cashmere ("content claim"); and (2) the only cashmere

in the products was recycled, as opposed to virgin ("recycled cashmere claim").

*Id*. at 307.    After the district court granted summary judgment in favor of

defendants, the plaintiffs appealed, and the First Circuit Court of Appeals was

tasked with determining whether the false statements in issue were material. *Id*. at

311-12.

The First Circuit noted at the outset that the standard for materiality requires

a plaintiff to prove that a defendant's deception is "likely to influence the

---

[82] Fresh Bourbon Language Guidelines, **filed under seal as** *Confidential For Attorney Eyes Only,* R. 73-23, Page ID# 1293.

[83] Fresh Bourbon's Response to Motion for Partial Summary Judgment, R. 77-1, Page ID## 1612-1613.

purchasing decision," which can be done by showing that the false or misleading statement relates to an "inherent quality or characteristic" of the product. *Id*. (quoting *Clorox Co. v. Proctor & Gamble Commercial Co*., 228 F.3d 24, 33 n. 6 (1st Cir. 2000) and *Nat'l Basketball Ass'n v. Motorola, Inc*., 105 F.3d 841, 855 (2d Cir.1997)). Applying this standard, the First Circuit determined an issue of fact as to the materiality element existed in light of the defendants' prominent labeling of their garments as "Cashmere and Wool," "A Luxurious Blend of Cashmere and Wool," "Cashmere Blend," or "Wool and Cashmere," as well as their conspicuous advertisement of their garments as "Cashmere Blazers." *Id*. at 312. Based on these facts, the First Circuit held it would be "reasonable to infer from defendants' aggressive marketing strategy highlighting the 'cashmere' nature of the blazers that defendants themselves believed cashmere to be an inherent and important characteristic of the blazers." *Id*.

With respect to the recycled cashmere claim, the First Circuit determined that the defendants' misrepresentations were also material. *Id*. at 312-13. Although the plaintiffs did not submit a market study or other direct evidence of consumer influence, the plaintiffs presented evidence demonstrating: (1) the recycling process damages fibers in the material; and (2) one of the defendant's largest retail customers, Saks, did not wish to sell garments containing recycled cashmere. *Id*. After again emphasizing that "plaintiffs are not required to present evidence that

32

defendants' misrepresentation actually influenced consumers' purchasing decisions, but that it was *likely* to influence them," the First Circuit determined the plaintiffs had presented sufficient evidence to demonstrate materiality "[g]iven the significant degree to which using recycled fibers adversely impacts the quality, texture, and characteristics of cashmere, and considering Saks' erratic behavior upon learning of the mislabeling." *Id*. at 313 (emphasis in original).

Despite citing *Cashmere & Camel* in analyzing the materiality element,[84] the District Court overlooked two fundamental principles the case set forth, which, if applied correctly, should have led the District Court to grant Brough Brothers partial summary judgment, or alternatively, to deny Fresh Bourbon summary judgment. First, the District Court determined Brough Brothers could not prove Fresh Bourbon's statements were material because "there was no evidence that the allegedly false statements influenced any consumer's buying decisions."[85] As *Cashmere & Camel* makes clear, however, Brough Brothers was not "required to present evidence that [Fresh Bourbon's] misrepresentation actually influenced consumers' purchasing decisions, but that it was *likely* to influence them." *Id.* (emphasis in original). The Sixth Circuit applies this same standard. *Am. Council of Certified Podiatric Physicians*, 185 F.3d at 613 (holding a statement "is material

---

[84] Opinion and Order, R. 114, Page ID## 2506, 2508.
[85] Opinion and Order, R. 114, Page ID# 2508.

in that it will *likely* influence the deceived consumer's purchasing decisions.") (emphasis added).

Second, the District Court disregarded Fresh Bourbon's extensive and misleading efforts to market itself as the "first," holding that this evidence was insufficient to demonstrate materiality.[86]   But, as *Cashmere & Camel* demonstrates, Fresh Bourbon's "aggressive marketing strategy" highlights that Fresh Bourbon believed being the "first" bourbon supposedly "produced" or "developed" by African Americans was an "inherent and important characteristic" of its products. *Id*. at 312. Indeed, no other conclusion can be reached, as Fresh Bourbon has admitted its "story" of allegedly being the first Black distillery in Kentucky's history is critically important to breaking through in a crowded marketplace and "selling the first bottle" of a new brand of bourbon.[87]

Proclaiming to be the first African Americans to reach various milestones in the bourbon industry was not accidental; Fresh Bourbon clearly believed that being the "first" was an important characteristic of its bourbon that would attract consumers to the Fresh Bourbon brand. Because Fresh Bourbon and Brough Brothers have agreed that being the first black-owned distillery was part of their marketing strategy and differentiates their brand from others, there is no question

---

[86] Opinion and Order, R. 114, Page ID# 2508.
[87] *Local couple bringing new bourbon experience to Lexington*, WTVQ.com, R. 73-15, Page ID# 1227 (emphasis added).

34

that the statements in issue are material. Brough Brothers was entitled to summary judgment as a result. At a minimum, *Cashmere & Camel* makes clear that the evidence presented by Brough Brothers is enough to be submitted to a jury to determine where Fresh Bourbon's false statements are material.

## III.    BROUGH BROTHERS IS ENTITLED TO A TRIAL ON DAMAGES.

For the foregoing reasons, the undisputed facts demonstrate that Fresh Bourbon engaged in false advertising under the Lanham Act by promoting itself as the "first" in several respects, when clearly it was not. As a result of Fresh Bourbon's conduct, Brough Brothers is entitled to disgorgement of Fresh Bourbon's profits, costs, compensatory damages, and other equitable remedies, including a permanent injunction barring Fresh Bourbon from future misleading promotional statements. Brough Brothers, however, recognizes the issue of damages implicates questions of fact that are not appropriate for summary judgment. Accordingly, the District Court's Opinion and Order should be reversed and remanded for entry of summary judgment in favor of Brough Brothers on liability, with the amount of damages left to be determined at trial. *See* Rule 56 (emphasis added) ("[a] party may move for summary judgment, identifying each claim or defense--*or the part of each claim or defense*--on which summary judgment is sought.") (emphasis added); *SharkNinja Operating LLC v. Dyson Inc.*, 200 F.Supp.3d 281, 289 (D. Mass. 2016) ("Although it is the Court that ultimately

35

decides whether to award profits, enhanced damages, and/or attorney's fees under 15 U.S.C. § 1117(a), this decision must be informed by subsidiary factual findings[.]").   Alternatively, in the event this Court determines questions of fact remain as to Fresh Bourbon's liability under the Lanham Act, then the Court should remand the case to the District Court for a trial on both liability and damages for Fresh Bourbon's false advertising.

## CONCLUSION

For the foregoing reasons, Brough Brothers requests that the Court: (1) reverse the District Court's Judgment; (2) direct the entry of summary judgment in favor of Brough Brothers as to Fresh Bourbon's liability for false advertising in violation of the Lanham Act; (3) direct the District Court to declare that Brough Brothers is the first black-owned bourbon distillery in Kentucky; and (4) remand the case to the District Court to conduct a trial on Brough Brothers' entitlement to disgorgement, monetary damages, attorneys' fees, a permanent injunction, and any other remedies permitted by the Lanham Act.   In the event the Court determines Brough Brothers is not entitled to partial summary judgment on liability, Fresh Bourbon's motion for summary judgment should nonetheless have been denied by the District Court. Thus, alternatively, Brough Brothers requests that the Court reverse the District Court's Judgment and remand the case for a full trial on Brough Brothers' Lanham Act claim.

36

Respectfully submitted,

/s/ Brian M. Johnson
Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 W. Vine Street, Suite 1700
Lexington, KY  40507
Phone:  (859) 899-8704
Facsimile: (844) 670-6009
BJohnson@dickinsonwright.com
LMayfield@dickinsonwright.com
*Counsel for Appellant*
*Victory Global, LLC*

37

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      In accordance with Fed. R. App. P. 32(g), I certify that this brief is written in a proportionately spaced, 14-point Times New Roman font, and contains 8,045 words, exclusive of the material not counted under Fed. R. App. P.  32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14 point font.

*/s/ Brian M. Johnson*
*Counsel for Appellant*
*Victory Global, LLC*

38

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DESCRIPTION | PAGE ID# RANGE |
|---|---|---|
| 1 | Complaint | 1-11 |
| 9 | Answer | 30-44 |
| 70-1 | Fresh Bourbon's Motion for Summary Judgment | 717-730 |
| 73 | Brough Brothers' Motion for Partial Summary Judgment | 1034-1060 |
| 73-1 | Deposition of Sean Edwards | 1061-1097 |
| 73-2 | Michael Veach Report | 1098-1104 |
| 73-3 | Deposition of Tim Knittel | 1105-1126 |
| 73-5 | Deposition of Victor Yarbrough | 1131-1149 |
| 73-6 | TTB Permit | 1150-1152 |
| 73-7 | KACC License No, 056-DTB-169578 | 1153-1162 |
| 73-8 | Louisville Metro DCR Distiller's License No. LIC-ABL-20-00099 | 1163-1173 |
| 73-10 | Fresh Bourbon's Response to Brough Brothers' Interrogatory No. 10 | 1179-1194 |
| 73-11 | LEX 18 News article | 1195-1204 |
| 73-12 | Fresh Bourbon's website | 1205-1210 |
| 73-13 | X social media post | 1211-1219 |
| 73-14 | Brough Brothers' Motion for Partial Summary Judgment | 1220-1225 |
| 73-15 | WTVQ.com *Local couple bringing new bourbon experience to Lexington* | 1226-1230 |
| 73-16 | Senate Resolution | 1231-1232 |
| 73-17 | Deposition of Tia Edwards | 1233-1245 |
| 73-18 | Text message exchange | 1246-1248 |
| 73-23 | Fresh Bourbon's Language Guidelines (filed under seal) | 1293 |
| 77 | Fresh Bourbon's Response to Motion for Partial Summary Judgment | 1348-1356 |
| 80-2 | Deposition of Andrew Buchanan | 1792-1816 |
| 80-5 | Deposition of Sean Edwards | 1849-1851 |
| 81 | Fresh Bourbon's Reply in Support of Motion for Summary Judgment | 1852-1861 |
| 114 | Opinion & Order | 2495-2512 |
| 115 | Judgment | 2513 |

| RECORD ENTRY | DESCRIPTION | PAGE RANGE | ID# |
|---|---|---|---|
| 116 | Notice of Appeal | 2514-2515 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*/s/ Brian M. Johnson*
*Counsel for Appellant*
*Victory Global, LLC*

41