**Case No. 25-5173**

# United States Court Of Appeals
## FOR THE SIXTH CIRCUIT

**VICTORY GLOBAL, LLC, DBA BROUGH BROTHERS DISTILLERY**

*Appellant*

**v.**

**FRESH BOURBON LLC**

*Appellee*

**On Appeal from the United States District Court
for the Eastern District of Kentucky, Case No. 5:21-cv-00062**

## BRIEF OF APPELLEE, FRESH BOURBON LLC

Perry Adanick
ROLFES HENRY CO., LPA
10200 Forest Green Blvd., Suite 602
Louisville, KY 40223
(502) 371-4000
(502) 371-4009 (FAX)
padanick@rolfeshenry.com
*Counsel for Appellee,
Fresh Bourbon LLC*

i

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS</u>
## <u>AND FINANCIAL INTEREST</u>

Pursuant to Sixth Circuit Rule 26.1, Appellee, Fresh Bourbon LLC, makes the

following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? **<u>No.</u>**

2. Is there a publicly owned corporation, not a party to the appeal, that has a

   financial interest in the outcome? **<u>No.</u>**


*/s/ Perry A. Adanick*
*Counsel for Appellee, Fresh Bourbon LLC*

# TABLE OF CONTENTS

**DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST** ................................................................ ii

**TABLE OF CONTENTS** ..................................................................iii

**TABLE OF AUTHORITIES** ..............................................................iv

**STATEMENT REGARDING ORAL ARGUMENT** ...............................vi

**STATEMENT OF ISSUES** ................................................................ 1

**STATEMENT OF THE CASE** ........................................................... 2

**SUMMARY OF ARGUMENT** ........................................................... 7

**ARGUMENT** ....................................................................................... 8

1.    APPELLANT, BROUGH BROTHERS' AGRUMENTS WERE NOT PROPERLY PRESERVED IN THE DISTRICT COURT ......................................................... 8

2.    THE DISTRICT COURT PROPERLY HELD THAT BROUGH BROTHERS' LANHAM ACT CLAIMS FAIL BECAUSE FRESH BOURBON'S STATEMENTS WERE NEITHER FALSE NOR MISLEADING...................................................... 10

3.    THE DISTRICT COURT PROPERLY HELD BROUGH BROTHERS FAILED TO DEMONSTRATE THAT ANY STATEMENT BY FRESH BOURBON WAS MATERIAL .......................................................................... 24

**CONCLUSION** .................................................................................. 29

**CERTIFICATE OF COMPLIANCE** ............................................... 31

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**.................................................................................. 32

**CERTIFICATE OF SERVICE** ........................................................ 33

# **TABLE OF AUTHORITIES**

**Cases**

*Scottsdale Insurance Company v. Flowers*, 513 F.3d 546, 552
(6th Cir. 2008)........................................................................................ 8

*Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) .................................... 8

*United States v. Huntington National Bank*, 574 F.3d 329, 332
(6th Cir. 2009)........................................................................................ 9

*Verisign Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017)............... 9

*Johnson & Johnson Vision Care Inc. v. 1-800 Contacts, Inc.*, 299 F.3d
1242, 1248 (11th Cir. 2002)......................................................................... 9

*American Council of Certified Podiatric Physicians and Surgeons v.
American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 613
(6th Cir. 1999) .......................................................................... 10, 20

*Service Jewelry Repair, Inc. v. Cumulus Broadcasting LLC*, 145 F.Sub.3d
737, 746 (Middle Dist. Tenn. 2015) .............................................................. 14

*Louisiana-Pacific Corp. v. James Hardie Building Products*,
928 F.3d 514 (6th Cir. 2019) ...................................................................... 14, 15

*Sandoz Pharmaceutical Corporation v. Richardson-Vicks, Inc.*,
902 F.2d 222, 229 (3rd Cir. 1990) ............................................................... 20

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*,
270 F.3d 298, 323 (6th Cir. 2001)................................................................. 21

*Cashmere and Camel Hair Manufacturers Institute v. Saks Fifth Avenue*,
284 F.3d 302, 312, Footnote 10 (U.S.C.A. 1st Cir. 2002)........................... 21, 22

*National Basketball Association v. Motorola Inc.*, 105 F.3d 841, 855

(2ⁿᵈ Cir. 1997) ............................................................. 22

*ALS Enterprises v. Robinson Outdoor Products LLC*, 2017 U.S. District
LEXIS 11946 (U.S.D.C. Mich. 2017) ........................................... 22

**Statutes**

15 U.S.C.§ 1225(a) ............................................... 2, 5, 7, 8, 9, 10, 19, 20

26 U.S.C.S.§5002(a)(1)................................................................. 13

26 U.S.C.S.§ 5002(a)(4) ............................................................... 14

KRS 241.010(27) ........................................................................ 14

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

It is the Appellee's position that oral argument is not required because the issues involved are straight forward and the analysis contained in the District Court's Opinion and Order is thorough and detailed. Nevertheless, the Appellee will engage in oral argument if the Court believes it will be helpful.

## <u>STATEMENT OF ISSUES</u>

1.      In a Lanham Act case, Brough Brothers argues that the District Court failed to place the contested statements in context and failed to find them false by "necessary implication." This argument was not made to the District Court. Was it properly preserved for appeal?

2.      Brough Brothers filed a Lanham Act case against Fresh Bourbon based on statements relating to various "firsts" in the bourbon market. Did the District Court properly apply the law when it determined that Fresh Bourbon's statements were not false?

3.      The Lanham Act requires evidence that allegedly false statements are material and would influence a customer's purchasing decision. Did the District Court properly grant summary judgment for Fresh Bourbon when Brough Brothers presented no proof that the statements were material?

## STATEMENT OF THE CASE

In 2017 Sean and Tia Edwards formed Fresh Bourbon, LLC for the purpose of creating a unique bourbon product and ultimately building their own production facility. The next several months were spent developing a flavor profile and creating a unique mash bill – the recipe that gave them a unique bourbon whiskey that met their envisioned goals. (Doc. 70-2, Sean Edwards deposition, Vol. I, Page ID #745).

Fresh Bourbon began producing its product at Hartfield & Company Distillery in Paris, Kentucky in January or February 2018. Andrew Buchanan, Hartfield's Master Distiller, worked with the Fresh Bourbon team during the initial runs to teach them the process of making bourbon and how to use Hartfield's distilling equipment. After the first few runs the Fresh Bourbon team was working on its own to produce its product at the Hartfield & Company facility. Fresh Bourbon began selling its product in 2020. (Doc. 70-2, Sean Edwards deposition, Vol. I, Page ID #744-745).

On February 26, 2020 the Senate of the Commonwealth of Kentucky passed Senate Resolution No. 176 honoring Sean and Tia Edwards and the Fresh Bourbon Distilling Company acknowledging "the importance of this being the first black-owned distillery in Kentucky." This Resolution also contained the following points:

1. The Fresh Bourbon Distilling Company is considered to be the first black-owned bourbon distillery in Kentucky;

2.   Fresh Bourbon produces bourbon in the state of Kentucky with an African American Master Distiller, the first in Kentucky since slavery;

3.   Fresh Bourbon's products are mashed, fermented, distilled, and ultimately bottled entirely in Kentucky, and;

4.   Fresh Bourbon has announced that it plans to build a distillery in downtown Lexington. (Doc. 70-3, Senate Resolution No. 176, Page ID #768).

Unfortunately, the COVID epidemic interfered with Fresh Bourbon's plans to open a production facility. A property was leased in early 2022 and the required permits were obtained later that year. Fresh Bourbon began distilling its product at its own facility in late 2022. (Doc. 70-2, Sean Edwards deposition, Vol. I, Page ID #742-743).

The Plaintiff, Victory Global, LLC, was registered in the Commonwealth of Kentucky in October 2013 and began operating as an import/export company. Documents from the Kentucky Secretary of State show that Victory Global's annual report filed June 29, 2018 list its business type as "Wholesale Trade – Nondurable Goods." (Doc. 77-2, Victory Global annual report online filing, Page ID #1669). Brough Brothers Distillery was registered as an assumed name in August 2018. (Doc. 70-4, Victor Yarbrough deposition, Page ID #773, 774).

3

Unlike Fresh Bourbon, Brough Brothers did not make its own unique product. Instead, it used sourced whiskey – it bought someone else's finished product and had it bottled with the Brough Brothers label. Brough Brothers did not make the product it is currently selling in the marketplace. It started producing its own product in late 2020 but had not released any bourbon produced in Kentucky as of the date of Victor Yarbrough's deposition on March 7, 2024. There is no evidence in the record showing bourbon production by Victory Global prior to the creation of the Brough Brothers brand in August 2018.

The timeline of relevant events is as follows:

**2013 -** Victory Global formed as an import/export company.

**2017** - Fresh Bourbon LLC is formed 12/28/2017 for the purpose of making a unique bourbon product.

**2018** - Fresh Bourbon begins distilling its product at Hartfield & Company in January/February 2018. Acting under the supervision of Hartfield's master distiller, Fresh Bourbon's principals and employees are engaged in all aspects of the process including mixing grains, making the mash, distilling and barreling the bourbon. Although Hartfield's master distiller supervised the first few runs, Fresh Bourbon's principals and employees are working and distilling on their own by May 2018.

**2018** - Victory Global's annual report to the Kentucky Secretary of State shows it is a wholesale trade business. Victory Global registers Brough Brothers Distillery as an assumed name on August 20, 2018. Brough Brothers buys finished bourbon in Indiana and has it bottled with the Brough Brothers label.

**2020** - Fresh Bourbon begins selling the bourbon it made at the Hartfield & Company Distiller. Victory Global is selling the

sourced bourbon it bought from a producer in Indiana.

**2021** - Victory Global files its lawsuit on March 1, 2021.

**2022** - Victory Global starts distilling its own product at its own location in September/October 2022.

**2023** - Fresh Bourbon starts distilling at its own location in January/February 2023.

On March 1, 2021, Brough Brothers filed a Complaint alleging, among other things, that certain statements made by Fresh Bourbon were false or misleading in violation of the Lanham Act, 15 U.S.C.§ 1225(a). After discovery was completed, Fresh Bourbon filed a Motion for Summary Judgment asserting that the contested statements were true and that Brough Brothers had failed to show that any of the statements were material. Brough Brothers filed its own Motion for Partial Summary Judgment and sought a trial on damages. The District Court's Opinion and Order (Doc. 114, Page ID #2495-2512) granted Fresh Bourbon's Motion for Summary Judgment and denied Brough Brothers's Motion for Partial Summary Judgment. This appeal followed.

Appellant's Statement of the Case incorrectly asserts that Fresh Bourbon "concedes that Brough Brothers is the first African-American owned distillery in Kentucky." It supports this claim with extracted statements from Mr. Edwards' deposition but fails to include a portion of the testimony that places the statement in its proper context. Mr. Edwards' actual testimony reads as follows:

5

"Q.    So back to the senate resolution, you agree that you did not own the first African American-owned distillery in the state; is that correct?

A.    Yes, I agree that we did not – we did not own – yes, they were – they opened their building.

Q.    And you agree that they actually distilled bourbon in their own distillery – let me rephrase the question. You agree that Brough Brothers distilled bourbon in its own facility before Fresh Bourbon did?

A.    In their own facility, yes. I do not agree that they distilled bourbon before us.

Q.    That wasn't my question.

A.    Okay. So yes. Well –

Q.    Well, let me rephrase. So you agree that Brough Brothers distilled bourbon in its own facility before Fresh Bourbon?

A.    Yes." (Doc. 77-1, Sean Edwards deposition, Vol. II, Page ID #1395-1396).

While the statement in Appellant's Brief appears to be an assertion that Brough Brothers was the first to distill bourbon, the deposition exchange in context makes it clear that Mr. Edwards was speaking only of the same brick-and-mortar location described above. Mr. Edwards makes it perfectly clear that Fresh Bourbon distilled its own unique product while Brough Brothers was still purchasing finished whiskey from someone else.

6

## SUMMARY OF ARGUMENT

Both the Complaint and Brough Brothers Motion for Summary Judgment asked the Court to review specific statements made by Fresh Bourbon to determine whether they were false and misleading in violation of the Lanham Act. In a thorough and well-reasoned Opinion and Order, Judge Karen Caldwell held that Fresh Bourbon's statements were not false and, even if they were, Brough Brothers failed to show that any of the statements were material.

Brough Brothers is now attempting to assert a new claim – that the Court failed to consider the statements "in context" and that the statements are false "by necessary implication." Fresh Bourbon argues that these arguments were not presented to the District Court and were not properly preserved for appeal.

Fresh Bourbon also shows, as it did in the District Court, that the disputed statements were not literally false. Brough Brothers presented no evidence of actual deception of the relevant consumer market and no evidence that the statements were material as required by the Lanham Act. Fresh Bourbon was, as the District Court determined, entitled to summary judgment as a matter of law.

## ARGUMENT

### 1. APPELLANT, BROUGH BROTHERS' AGRUMENTS WERE NOT PROPERLY PRESERVED IN THE DISTRICT COURT.

This Court has made it clear that "an argument not raised before the District Court is waived on appeal." *Scottsdale Insurance Company v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) ("Generally, we will not address arguments raised for the first time on appeal."). Yet this is what Brough Brothers asks this Court to do.

Throughout the history of this case, the District Court was asked to evaluate specific statements made by Fresh Bourbon that Brough Brothers claimed violated the requirements of the Lanham Act. The District Court's Opinion and Order sets out these statements and provides citations to the source of Brough Brothers allegations:

> "    In determining precisely what statements Brough Brothers points to for its Lanham Act claim, the Court will look to its response to Fresh Bourbon's motion for summary judgment and to Brough Brothers' motion for partial summary judgment. Brough Brothers alleges that Fresh Bourbon made the following specific false statements:
>
> 1) Fresh Bourbon was the "first black-owned distillery in Kentucky" (DE 80 Response 5);
>
> 2) Fresh Bourbon is the "[f]irst black-owned bourbon distillery coming to downtown Lexington" (DE 80 Response 7; DE 73 Mem. 9; DE 73-12 Fresh Bourbon Website at CMECF p. 5);

3)    "There had been no African Americans producing bourbon that weren't slaves" until Fresh Bourbon did it (DE 80 Response 7; DE 73 Mem. 9; DE 73-11 Lex 18 Article);

4)    Fresh Bourbon is "the first bourbon developed grain to glass by African Americans in the state of Kentucky" (DE 80 Response 7; DE 73 Mem. 9; DE 73-13 X Account); and

5)    Fresh Bourbon employed Kentucky's "first African American Master Distiller in Kentucky since slavery" (DE 80 Response at 15.)"

(Opinion and Order, Doc. 114, Page ID #2498-2499).

The Court properly evaluated these statements and concluded that summary judgment for Fresh Bourbon was legally appropriate. Disappointed by this decision, Brough Brothers has now created a new argument that was not raised below – it claims "the District Court considered each of Fresh Bourbon's statements in isolation and failed to place all of the statements in context with one another" and further claims that any statements made by Fresh Bourbon "are literally false by necessary implication."

The requirements for preserving an argument for appeal are well known. In *United States v. Huntington National Bank*, for example, the 6th Circuit Court of Appeals gave a succinct analysis:

"At a minimum, a litigant must state the issue with sufficient clarity to give the Court and opposing parties notice that it is asserting the issue. Yet notice by itself does not suffice. Otherwise, a litigant could preserve an issue merely by summarily mentioning it, and we know that conclusory

9

allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument, do not meet this standard. To preserve the argument, then, the litigant not only must identify the issue but also must provide some minimal level of argumentation in support of it."

574 F.3d 329, 332 (6th Cir. 2009).

This new theory was never argued in the District Court and is, therefore, waived.

In addition, Brough Brothers' "necessary implication" argument, even if it had been properly preserved, is legally incorrect. Brough Brothers must show that each challenged statement satisfies all five Lanham Act requirements. "[A] Lanham Act claimant may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others." *Verisign Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017). Any statement or advertisement must be evaluated in full but independently, and not in concert with others. *Johnson & Johnson Vision Care Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002).

## 2. THE DISTRICT COURT PROPERLY HELD THAT BROUGH BROTHERS'S LANHAM ACT CLAIMS FAIL BECAUSE FRESH BOURBON'S STATEMENTS WERE NEITHER FALSE NOR MISLEADING

To establish a claim for false or misleading advertising under the Lanham Act Brough Brothers must establish all of the following:

1. Fresh Bourbon made false or misleading statements of fact concerning its products;

2. The statements actually or tend to deceive a substantial portion of the

10

intended audience;

3. The statements are material in that they will likely influence the deceived consumers purchasing decisions;

4. The statements were introduced into Interstate Commerce, and;

5. The statements caused actual damage to the Brough Brothers. *See American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

The Court properly and carefully applied the law to the facts in the records to determine that Brough Brothers failed to meet these essential elements.

Brough Brothers first takes issue with the assertion that "Fresh Bourbon's principals are the first African Americans to make Kentucky bourbon that were not slaves." (Doc. 1, Complaint ¶ 34(a)). Brough Brothers presented no evidence to show that this statement is false. Michael Veach, the "bourbon historian" retained as an expert witness by the Brough Brothers, speculates that there may have been others, but is unable to provide any proof to support his speculation. He admits that "if there was any written record of African Americans making whiskey before now, since the Civil War, I have yet to find them." (Doc. 70-5, Veach deposition, Page ID #817).

Unlike Brough Brothers, Fresh Bourbon did not purchase finished bourbon

11

from another provider and simply put it in bottles. Instead, Fresh Bourbon produced its own product using the facilities and licensure of Hartfield & Company until such time as it could open and operate its own location. Andrew Buchanan, the owner and master distiller of Hartfield & Company, began working with the people at Fresh Bourbon to teach them the process but explained that as the relationship developed "we were a whole lot more hands off and they were there doing a lot more of it." At that point Mr. Buchanan "had no issue whatsoever letting them just kind of have free rein in the building." (Doc. 70-6, Andrew Buchanan deposition, Page ID #847). After noting that members of Fresh Bourbon were engaged in all of the different aspects of the bourbon production process, he explained the relationship between Hartfield's employees and Michael Adams, Fresh Bourbon's Master Distiller:

> "Question:   Now when Michael Adams was running the still, did he do that at certain times under your supervision?
>
> Answer:   Yes.
>
> Question:   Did he do that at certain times without your supervision?
>
> Answer:   Yes.
>
> Question:   Did he do that at certain times without the supervision of anybody at Hartfield?
>
> Answer:   Yes." (Doc. 70-6, Andrew Buchanan deposition, Page ID #851-852).

12

By contrast, Brough Brothers did not make its own product. Instead, it bottled and sold sourced bourbon that was made in Indiana. (Doc. 70-4, Victor Yarbrough deposition, Page ID #777). Brough Brothers did not start distilling a product in Kentucky until September or October of 2020. None of that product has been sold. (Doc. 70-4, Victor Yarbrough deposition, Page ID #776).

The evidence in this case shows that the Fresh Bourbon team began distilling its unique product using the Hartfield & Company facility in early 2018. Brough Brothers failed to demonstrate that any other African Americans who were not slaves produced their own bourbon in Kentucky prior to that date, and its expert historian could only speculate that it was "possible." The Brough Brothers has, therefore, failed to demonstrate that Fresh Bourbon's claim is false.

Brough Brothers next complains that Fresh Bourbon has falsely claimed to be "the first black owned/African American owned distillery in Kentucky" or "one of the first black owned/African American owned distilleries in Kentucky." (Doc. 1, Complaint ¶ 34(b-c)). The Complaint misstates the statements actually made by Fresh Bourbon. Instead, Fresh Bourbon's website and statements say only that Fresh Bourbon *is considered by the Commonwealth of Kentucky* to be the first black owned bourbon distillery in Kentucky. This is a direct reference to Senate Resolution No. 176 which specifically states that "The Fresh Bourbon Distilling Company is considered to be the first black owned bourbon distillery in Kentucky." As there is

13

no question that the Resolution exists, the District Court correctly found that the statement is not literally false.

As pointed out in the report prepared by defense expert Tim Knittel (Doc. 70-7, Knittel Report, Page ID #869-890), the word "distillery" has a number of different meanings depending on its context. While it can certainly refer to a physical brick and mortar location, Mr. Knittel goes on to explain that:

> "Often, "distillery" is applied to a place either that had previously performed the work of manufacturing beverage spirit alcohol or when the *intent exists* to perform the work of manufacturing beverage spirit alcohol in the future at that location." (Doc. 70-7, Knittel Report, Page ID #877) (Emphasis added).

Mr. Knittel's report cites as an example Castle & Key Distillery in Millville, Kentucky at a time where "no operating stills existed on the site, no active license was issued for the property and no manufacturing was being done, yet the word "distillery" was liberally used to describe it." (Doc. 70-7, Knittel Report, Page ID #877-878).

Mr. Knittel next describes instances where "the word "distillery" is often used to apply to a company which is having a spirit bottled for it" and cites as examples Pappy Van Winkle and Old Steelhouse Distillery. While the Pappy Van Winkle products indicate that they are bottled by "Old Rip Van Winkle Distillery," there is no such place. The products are manufactured at the Distilled Spirits Plant at Buffalo Trace Distillery. Similarly, Old Steelhouse Distillery *intends* to open a distillery but

14

does not yet have "an operating distilled spirits plant, still, bottling facility or manufacturing license of any type… ." (Doc. 70-7, Knittel Report, Page ID #877-878). Mr. Knittel explains that the use of the word "distillery" to indicate that an entity other than the place of distillation controls or owns the brand and product "is commonly understood both within the bourbon industry itself and within the bourbon category media and enthusiast communities." (Doc. 70-7, Knittel Report, Page ID #882).

Andrew Buchanan, the master distiller at Hartfield & Company, also explained that the word "distillery" can have a number of meanings depending on the context. (Doc. 70-6, Andrew Buchanan deposition, Page ID #840). While Fresh Bourbon may not have had a brick-and-mortar location at the time Brough Brothers's Complaint was filed, it nevertheless fits in one or more of the definitions of "distillery" mentioned by Mr. Knittel and Mr. Buchanan.

The United States Internal Revenue Code does not attempt to define the word "distillery," possibly because it is subject to multiple meanings depending on its context. Instead, 26 U.S.C.S. § 5002(a)(1) uses the term "distilled spirits plant" to describe any physical establishment which is qualified to perform "any distilled spirits operation." The statute defines "distiller" as any person who produces distilled spirits from any source or substance, brews or makes mash, wort, or wash fit for distillation or for the production of distilled spirits, separates alcoholic spirits

15

from any fermented substance, or has a still in his possession or use. 26 U.S.C.S § 5002(a)(4).

The Court recognized that Fresh Bourbon was a distiller operating at a distilled spirits plant in 2018. Fresh Bourbon began producing its unique product at Hartfield & Company Distillery in Paris, Kentucky in January or February 2018. Hartfield's master distiller worked with the Fresh Bourbon team during the initial runs to teach them the process of making bourbon and how to use Hartfield's distilling equipment. After the first few runs the Fresh Bourbon team was working on its own to produce its product at the Hartfield & Company facility. (Doc. 70-2, Sean Edwards deposition Vol. I, Page ID #744-745). The Fresh Bourbon team was producing distilled spirits, making mash fit for distillation and the production of distilled spirits, and separating alcoholic spirits from a fermented substance. Fresh Bourbon was a distiller operating at a licensed distilled spirit plant in 2018. Kentucky law defines "distiller" as any person who is engaged in the business of manufacturing distilled spirits at any distillery in the state. KRS 241.010(27). Under this analysis, Fresh Bourbon would be the distiller of the product made at Hartfield & Company even if it had not been physically involved in the distillation process.

As the District Court noted, Fresh Bourbon never claimed that it had a distiller's license when it produced its product at the Hartfield Distillery. The Court found that there are various reasonable interpretations of the words "produce" and

16

"develop" meaning that Fresh Bourbon's statements were not literally false and were, at most, ambiguous. As the District Court correctly noted, "whether a statement is too ambiguous to be literally false as a matter of law to be decided by the Court." *Service Jewelry Repair, Inc. v. Cumulus Broadcasting LLC*, 145 F.Sub.3d 737, 746 (Middle Dist. Tenn. 2015). A plaintiff relying on an ambiguous or misleading statement must prove that it deceived a significant portion of expected customers. *Louisiana-Pacific Corp. v. James Hardie Building Products*, 928 F.3d 514 (6th Cir. 2019). Because Brough Brothers presented no proof of an effect on consumers, the District Court was correct in dismissing its claim.

Brough Brothers next takes issue with the statement that "Fresh Bourbon employs the first African American Master Distiller in Kentucky since slavery." (Doc. 1, Complaint ¶ 34(d)). The evidence reflects that Fresh Bourbon hired Michael Adams as its Master Distiller in the summer of 2018. The evidence further reflects that Mr. Adams oversaw and participated in all aspects of the distillation and production of Fresh Bourbon using the facilities at Hartfield & Company in 2018. Brough Brothers failed to show the existence of any other African American Master Distiller prior to that date.

Brough Brothers and Brough Brothers's expert take issue with the definition of "Master Distiller" yet admit that there are no specific requirements. Michael Veach admitted early in his deposition testimony that "there is no legal definition of

17

a Master Distiller." (Doc. 70-5, Veach deposition, Page ID #817). Once again, Mr. Veach speculated that there may have been other African American Master Distillers after the Civil War but was unable to present any evidence to support this speculation:

> "Question:  Is there any documentation at all that during this time period there were any African American Master Distillers?
>
> Answer:    Not that I am aware of.
>
> Question:  So its your speculation that there may have been African American Master Distillers after the Civil War, but there is no documentary – documentation or other evidence that would support that speculation?
>
> Ms. Weyand: Objection. You can answer.
>
> Answer:    That is correct" (Doc. 70-5, Veach deposition, Page ID #820).

While Brough Brothers and its expert may speculate regarding the existence of other African American Master Distillers, they presented no evidence to show that Fresh Bourbon's statement is false.

Despite the fact that Brough Brothers's expert Michael Veach admitted that "there is no legal definition of a master distiller" (Doc. 70-5, Veach deposition, Page ID #817), Brough Brothers nevertheless attempts to cobble together a definition that supports its claim. While the Brough Brothers's expert believes there should be listed criteria, he admits that there are none and that the term is a matter of opinion:

18

"Q.    What are the criteria for being a master distiller?

A.    In my opinion, you have to have made whiskey for at least a four- or a five-year period and have a whiskey that other people, other distillers in particular, would judge as a good whiskey.

Q.    Are those criteria published anywhere?

A.    No. There are no published criteria for being a master distiller.

Q.    Is there any disagreement throughout the industry about what it takes to be a master distiller?

A.    In the industry? Historically, I would say no because they haven't even thought about the title.

Q.    They haven't thought about the title?

A.    Not until recently, I should say. You know, traditionally, the master distiller was always the distiller who'd been there for ten years or more making their whiskey and such. But, you know, in the last decade or so, that has changed to becoming more of a marketing person.

Q.    Okay. Now, I think in some of your own writings you said that there needs to be some governing body to set a standard about how you become a master distiller; is that correct?

A.    That's correct.

Q.    And is there such a governing body?

A.    No.

Q.    Is there any plan, as far as you know, to establish such a governing body?

19

A.    No.

Q.    So being a master distiller is just a matter of opinion?

MS. WEYAND: Objection.

THE WITNESS: Basically, yes." (Doc. 70-5, Veach deposition, Page ID #819).

Although Brough Brothers claims that the qualifications of Fresh Bourbon's master distiller do not meet their particular definition, the master distiller of Hartfield & Company has testified otherwise. After describing Michael Adams as Fresh Bourbon's master distiller, Hartfield's master distiller Andrew Buchanan was asked about Mr. Adams' qualifications:

"Q.    So what are his qualifications to be a master distiller?

A.    He's learned what I know.

Q.    At the time that he –

A.    Plus other stuff, I'm sure.

Q.    Like what?

A.    Oh, that part, I don't know.

Q.    What experience did he -- when did you first meet Mike?

A.    When they brought him to the distillery.

Q.    And how far into the process was that?

A.    It was pretty early on. I don't remember specific dates or anything like that, but it was pretty early on.

20

> Q. And then when he came to you, what did he know?
>
> A. Surprisingly more than I thought he would. He's -- he's a student of bourbon and all things distilleries, so and that's the multiple versions of distilleries." (Doc. 70-6, Andrew Buchanan deposition, Page ID #849).

The fact that Mr. Adams needed instruction on Hartfield's particular distillation apparatus did not change that assessment because, as Mr. Buchanan notes, every still is different:

> "Q. Did you teach him how to use the still?
>
> A. Yes.
>
> Q. Did he know how to use the still prior to coming to your facility?
>
> A. I think -- so, I think you need to look at the way that stills work at different places because every still is going to be different. Depending on the design and whether it's a batch still or a continuous still, you're talking about vastly different parameters in which you operate it. And so if I remember correctly, Mike had some idea of how distillation happened, separation of chemicals and all that kind of stuff. He did not know how our specific still worked, but the basic idea of distillation he had." (Doc. 70-6, Andrew Buchanan deposition, Page ID #849).

The fact that Hartfield's master distiller was involved in the initial runs of bourbon before turning it over to operation by Fresh Bourbon's employees does not change the fact that Fresh Bourbon had its own master distiller. As Jeremy Buchanan, Hartfield's current master distiller, pointed out, there can be more than one master distiller working on a single product:

21

"A.    … I mean, I think basically you would just say two master distillers are corroborating on a project, right? So there's plenty of instances in the industry where the master distiller from one distillery will come and work with, you know, the master distiller of another distillery, or they'll do some sort of partnership. But again, I mean, that's -- it's a very loosely defined term that, you know, has no real meaning." (Doc. 81-1, Jeremy Buchanan deposition, Page ID #1879).

As noted above, Brough Brothers' own expert testified that the term "master distiller" has no definition and is nothing more than a matter of opinion. As the District Court correctly noted, a matter of opinion cannot be the basis for a Lanham Act false advertising claim.

In any event, while Plaintiff and its expert may speculate regarding the existence of other African American master distillers, they presented no evidence to show that Fresh Bourbon's statement is false:

"Q.    You've also, in your report, said, "The statement that Sean and Tia Edwards are the first African Americans to make bourbon since slavery is impossible to verify at this time."· Are you still unable to verify that?

A.    That's correct." (Doc. 70-5, Veach deposition, Page ID #819).

Because of this complete failure of proof, the District Court properly rejected the claim.

Finally, Brough Brothers takes issue with the statement that "Fresh Bourbon owns or operates a registered distillery in Kentucky." (Doc. 1, Complaint ¶ 34(e)).

22

Fresh Bourbon has never made any claim that it was a "registered distillery." While it is true that Senate Resolution No. 176 states that Fresh Bourbon "is considered to be the first black owned bourbon distillery in Kentucky," the Resolution goes on to state that Fresh Bourbon "has announced that they plan to build" a distillery in Lexington, Kentucky. (Doc. 70-3, Senate Resolution, Page ID #768). There is no statement or implication that Fresh Bourbon, at the time the Complaint was filed, operated from its own brick and mortar location. Instead, it legally produced its product using the distillation facilities at Hartfield & Company. There has been no evidence – or even suggestion – that Fresh Bourbon's activities in this regard were unlawful.

As noted above, the term "distillery" can be used in a number of different ways depending on the context. The fact that the Senate Resolution specifically indicates that Fresh Bourbon intended to build a distillery in downtown Lexington makes it clear that the Resolution was not using the term in the context of an existing brick and mortar facility. As noted in Mr. Knittel's Report, the claim that Fresh Bourbon is the first black-owned distillery in Kentucky based on its recognition by the Kentucky State Senate and the claim that Brough Brothers Distillery has the first black-owned licensed distilled spirits plant in Kentucky "can exist simultaneously and without conflict." (Doc. 70-7, Knittel Report, Page ID #888).

23

### 3. THE DISTRICT COURT PROPERLY HELD BROUGH BROTHERS FAILED TO DEMONSTRATE THAT ANY STATEMENT BY FRESH BOURBON WAS MATERIAL.

As noted above, a Plaintiff claiming that statements of fact are false or misleading must show the statements actually or tend to deceive a substantial portion of the intended audience and must also show the statements are material in that they will likely influence the deceived consumers' purchasing decisions. *American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). Proof of actual deception requires showing the consumers were actually deceived by a party's ambiguous or true but misleading statements. *Id* at 616. A party relying on statements that are literally true yet misleading "cannot obtain relief by arguing how consumers would react; it must show how consumers ***actually do*** react." *American Council* at 614 quoting *Sandoz Pharmaceutical Corporation v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3rd Cir. 1990). (Emphasis added).

Following a thorough analysis showing that the statements made by Fresh Bourbon were not literally false, the District Court nevertheless continued its Lanham Act analysis by "assuming without deciding" that the statements *were* literally false and that actual deception is presumed. Despite this, the Court found that Fresh Bourbon was still entitled to Summary Judgment because of Brough Brothers' failure to provide any evidence that the statements were material.

24

Victor Yarbrough, the CEO and Corporate Representative of the Brough Brothers, admitted in his deposition that no one has told them that they were not purchasing his product because it was not the first African American distillery. Brough Brothers has not done a market survey or other research to determine if potential purchasers did not purchase Brough Brothers's product because it was not the first African American distillery. (Doc. 70-4, Yarbrough deposition, Page ID #785). The Brough Brothers has not done any market testing to determine whether there is actually any additional value to being an African American bourbon. (Doc. 70-4, Yarbrough deposition, Page ID #773). Brough Brothers admits that Fresh Bourbon's statements did not affect Brough Brothers's relationships with its distributors. (Doc. 70-4, Yarbrough deposition, Page ID #792-793). Where, as here, the statements are literally true but allegedly deceptive or ambiguous, Brough Brothers must establish proof of actual deception and show that a significant portion of the consumer population was deceived. *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001). No such proof has been presented. It is not enough to speculate how customers might react to Fresh Bourbon's statements; the Brough Brothers must show how customers actually do react. Brough Brothers failed to do so, and the District Court properly found Fresh Bourbon entitled to summary judgment.

By failing to show that Fresh Bourbon's statements actually deceived a

25

substantial portion of the intended audience, Brough Brothers also failed to show that the statements were material and would likely influence the deceived customer's purchasing decisions. The U.S. Court of Appeals for the 1st Circuit has briefly explained materiality as follows:

> "Whether a misrepresentation is material has nothing to do with the nature of the relief sought or the Defendant's intent. Rather, materiality focuses on whether the false or misleading statement is likely to make a difference to purchasers. Thus, even when a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on customers." *Cashmere and Camel Hair Manufacturers Institute v. Saks Fifth Avenue*, 284 F.3d 302, 312, Footnote 10 (U.S.C.A. 1st Cir. 2002). (Internal citations omitted).

Although Brough Brothers belatedly recognizes the materiality requirement of a Lanham Act claim, it jumps to the conclusion of materiality without any supporting evidence. In *Cashmere and Camel Hair Manufacturers Institute*, for example, the Court found that certain statements were material because they related to an "inherent quality or characteristic" of the product (citing *National Basketball Association v. Motorola Inc.*, 105 F.3d 841, 855 (2nd Cir. 1997). The Court explained that certain misrepresentations regarding the cashmere content of a cashmere-blend blazer relates to an inherent characteristic of the product:

> "Indeed, it seems obvious that cashmere is a basic ingredient of a cashmere-blend garment; without it, the product could not be deemed a cashmere-blend garment or compete in the cashmere-blend market. Thus, it seems reasonable to conclude that Defendant's misrepresentation of the blazer's cashmere content

26

is material because it relates to a characteristic that defines the product at issue, as well as the market in which it is sold." *Id* at 312.

The Court went on to explain that the Plaintiff had presented testimony showing that recycled fibers affects the quality and characteristics of the garment, and further discussed proof that Saks initially refused to sell garments containing recycled cashmere. No such proof was offered in this case.

The U.S. District Court for the Western District of Michigan also discussed the importance of proof regarding the inherent quality or characteristic of a product in *ALS Enterprises v. Robinson Outdoor Products LLC*, 2017 U.S. District LEXIS 11946 (U.S.D.C. Mich. 2017). The Court found that certain statements were material because "ALS presented substantial evidence regarding the market for scent control hunting products and the importance of such products to hunters." *Id* at p.16-17.

In this case, unlike *Cashmere and Camel Hair Manufacturers Institute* and *ALS Enterprises*, the District Court specifically found that Brough Brothers presented no evidence showing that any allegedly false statements are material. Instead, Brough Brothers asserts that Fresh Bourbon's statements are material because Brough Brothers believes they are. The Court properly rejected this argument.

While Brough Brothers correctly points out that Sean Edwards of Fresh Bourbon said in an interview that "the story sells the first bottle, what's in it sells the

27

second," it totally ignores the story actually told. The WTVQ article (Doc. 73-15, Page ID #1227) makes the following points:

- Fresh Bourbon Distilling Company was recognized by the state of Kentucky as being the first African Americans to make Kentucky bourbon since slavery;

- Fresh Bourbon set out to build a brand using a completely new flavor profile;

- A primary ingredient is honey malt;

- The design of the bottle is unique, and;

- The couple hopes to bring a new distillery to the Lexington area.

As the District Court determined, all of these statements are true. Even if they were not, which of these statements actually affects the consumer's decision to purchase a bottle of whiskey? Whether it is the nature of the company or the design of the bottle, Brough Brothers' failure to provide any evidence of materiality supports the District Court's conclusion.

Brough Brothers has presented no proof that any of Fresh Bourbon's statements made any difference to Brough Brothers's customers. The District Court properly found that Fresh Bourbon is entitled to summary judgment as a matter of law.

## CONCLUSION

Brough Brothers now claims that the District Court failed to consider statements made by Fresh Bourbon "in context" and that the statements must be false "by necessary implication." Because these arguments were not made to the District Court, they are not properly preserved for appeal and should be rejected by this Court.

The District Court, in a thorough and well-reasoned Opinion and Order, properly applied the requirements of a Lanham Act claim to find that the challenged statements by Fresh Bourbon are true or not literally false. Although this was enough to support judgment in Fresh Bourbon's favor, the Court went beyond this and examined the proof with regard to the remaining elements of a Lanham Act claim. Because Brough Brothers presented no evidence of actual deception of the relevant consumer market and no evidence that the statements were material as required by the Lanham Act, the District Court properly determined that Fresh Bourbon is entitled to judgment as a matter of law.

For these reasons, and for such other reasons as the Court may determine, it is respectfully submitted that the lower Court's judgment in favor of Fresh Bourbon LLC must be AFFIRMED.

Respectfully submitted,

/s/Perry A. Adanick
Perry Adanick
ROLFES HENRY CO., LPA
10200 Forest Green Blvd., Suite 602
Louisville, KY 40223
(502) 371-4000
(502) 371-4009 (FAX)
padanick@rolfeshenry.com
*Counsel for Appellee,*
*Fresh Bourbon LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    In accordance with Fed. R. App. P. 32(g), I certify that this brief is written in a proportionately spaced, 14-point Times New Roman font, and contains 7,104 words, exclusive of the material not counted under Fed. R. App. P.  32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14 point font.

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DOC. NO. | DOCUMENT DESCRIPTION | PAGE ID # |
|---|---|---|
| 1 | Complaint | 1-11 |
| 70-2 | Sean Edwards Deposition | 731-767 |
| 70-3 | Senate Resolution No. 176 | 768 |
| 70-4 | Victor Yarbrough Deposition | 769-812 |
| 70-5 | Michael Veach Deposition | 813-827 |
| 70-6 | Andrew Buchanan Deposition | 828-868 |
| 70-7 | Timothy Knittel Report | 869-890 |
| 73-15 | WTVQ Article | 1227-1230 |
| 77-1 | Sean Edwards Deposition Volume II | 1357-1668 |
| 77-2 | Victory Global Annual Report Inline Filing | 1669 |
| 81-1 | Jeremy Buchanan Deposition | 1862-1889 |
| 114 | District Court's Opinion and Order | 2495-2512 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*/s/Perry A. Adanick*
*Counsel for Appellee,*
*Fresh Bourbon, LLC*