**Case No. 25-5173**

# United States Court Of Appeals
## FOR THE SIXTH CIRCUIT

VICTORY GLOBAL, LLC

*Appellant*

v.

FRESH BOURBON LLC

*Appellee*

**On Appeal from the United States District Court for the Eastern District of Kentucky, Case No. 5:21-cv-00062**

## REPLY BRIEF OF APPELLANT, VICTORY GLOBAL, LLC

Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 W. Vine Street, Suite 1700
Lexington, KY  40507
Phone:  (859) 899-8704
Facsimile: (844) 670-6009
bjohnson@dickinsonwright.com
lmayfield@dickinsonwright.com
*Counsel for Appellant*
*Victory Global, LLC*

-i-

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. ii

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..........................................................................................1

ARGUMENT ..................................................................................................2

    I.      BROUGH BROTHERS PROPERLY PRESERVED ITS ARGUMENT REGARDING WHAT CONSTITUTES LITERAL FALSITY UNDER THE LANHAM ACT. ......................2

    II.     EVEN CONSIDERED SEPARATELY, EACH STATEMENT IS LITERALLY FALSE. ........................................................6

          A.    Fresh Bourbon was the "first black-owned distillery in Kentucky." ..................................................7

          B.    Fresh Bourbon is the "[f]irst black-owned bourbon distillery coming to downtown Lexington" ...................15

          C.    "There had been no African Americans producing bourbon that weren't slaves," and Fresh Bourbon is "the first bourbon developed grain to glass by African Americans in the state of Kentucky." ...............16

          D.    Fresh Bourbon employed Kentucky's "first African American Master Distiller in Kentucky since slavery." ...............................................19

    III.    BECAUSE THE STATEMENTS ARE LITERALLY FALSE, DECEPTION IS PRESUMED. ..........................21

    IV.    THE FALSE STATEMENTS ARE MATERIAL. ...........................22

CONCLUSION ..............................................................................................25

CERTIFICATE OF COMPLIANCE .............................................................28

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............29

CERTIFICATE OF SERVICE .......................................................................30

-ii-

# TABLE OF AUTHORITIES

**Cases**

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999) ..............5, 22, 23

*Caldwell v. Enyeart*, 72 F.3d 129 (6th Cir. 1995).....................................................5

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 (1st Cir. 2002) ........................................................................................24

*Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000) ...........................................................................................................3

*Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735–36 (6th Cir. 2012) ................................................................................................3, 6

*Johnson & Johnson – Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3rd Cir. 1994)..................................................3

*Johnson & Johnson Vision Care Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002)........................................................................................7

*Louisiana-Pac Corp. v. James Hardie Bldg. Prods. Inc.*, 2018 WL 7272047, at *3 (M.D. Tenn. Dec. 20, 2018)........................................................................5

*Louisiana-Pac Corp. v. James Hardie Bldg. Prods. Inc.*, 335 F.Supp. 3d 1002, 1015 n.2 (M.D. Tenn. 2018) *aff'd*, 928 F.3d 514 (6th Cir. 2019) ............22

*Mahindra & Mahindra Ltd. v. FCA US LLC*, 2021 WL 323253, at *8 (E.D. Mich. Feb 1, 2021)..............................................................................................25

*Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017)................................................2

*Newborn Bros. Co., Inc. v. Albion Eng'ing Co.*, 481 F. Supp.3d 312, 349 (D.N.J. 2020)...............................................................................................8

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) ..........................................3, 22

*Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC*, 519 F.Supp. 3d 839, 854 (D. Or. 2021)...............................................................................24

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) ........................................................................................3, 22

*United Fabricare Supply Co., Inc.*, No. CV-12-3755-MWF, 2012 WL 2449916, \*3 (C.D Cal. June 27, 2012) ...............................................8

*United States v. Hamm*, 952 F.3d 728, 742 (6th Cir. 2020) ....................................2

*United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021) ........................................2

*Wysong Corporation v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018) ..............................................................................................22

## Regulations

27 C.F.R. § 1.21(a)...........................................................................................18

## Statutes

15 U.S.C. § 1225(a) ....................................................................... passim

KRS 241.080(28) .............................................................................................10

KRS 243.020(1) ...............................................................................................18

## **INTRODUCTION**

If an individual graduated from law school but never passed the Bar examination, would it be untruthful to market himself as the first attorney from his family to practice law in Kentucky? Would it be false for an accounting major to prematurely hold himself out as a "CPA" if he has yet to take the Certified Public Accounting examination? And, would it be false and misleading for someone with an engineering degree to advertise his engineering business without first obtaining the appropriate state licensure required to legally operate?

The answer to these questions is, of course, "yes," and the foregoing examples are no different than what Fresh Bourbon has done. Both Kentucky and Federal law impose various requirements that must first be met before a business can legally distill bourbon and operate a licensed distillery. Fresh Bourbon, however, concedes it was not licensed to legally distill bourbon or operate a distillery during the same timeframe in which Fresh Bourbon and its owners were claiming to be the "first" to reach various milestones – the first black-owned distillery in Kentucky, the first African Americans to develop bourbon that were not slaves, and the first African Americans to produce bourbon in Kentucky.

Faced with this issue, Fresh Bourbon has attempted to create fictitious definitions of terms such as "distill" and "distillery," hoping to create confusion where there is none. Just as certain requirements must be met before a person can

1

claim to be an attorney, CPA, or engineer, certain statutory requirements must first met before one can truly be considered a "distillery in Kentucky." Here, it is undisputed that the first party to meet those requirements was Brough Brothers. The undisputed facts, logic, normal usage of terms, and the specific context of Fresh Bourbon's marketing campaign all demonstrate that Fresh Bourbon engaged in false advertising under the Lanham Act.

## ARGUMENT

### I. BROUGH BROTHERS PROPERLY PRESERVED ITS ARGUMENT REGARDING WHAT CONSTITUTES LITERAL FALSITY UNDER THE LANHAM ACT.

Fresh Bourbon is incorrect in contending that Brough Brothers failed to preserve its argument that the various statements in issue should be considered in context and are literally false by necessary implication. Contrary to Fresh Bourbon's contention, Brough Brothers has merely explained the manner in which Fresh Bourbon's statements, when taken as a whole, are "literally false" under the Lanham Act - the central issue argued in the proceedings below. *See United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021) (quoting *United States v. Hamm*, 952 F.3d 728, 742 (6th Cir. 2020) ("Our forfeiture cases 'recognize[ ] a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim.'"); *Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017) (citations omitted) ("An argument is not forfeited on appeal

2

because a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised.").

Here, there is no question Brough Brothers preserved the argument that Fresh Bourbon's statements are literally false, which is the ultimate issue the "false by necessary implication" doctrine is designed to examine. *See Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735–36 (6th Cir. 2012) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000)) ("A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'"); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (citing *Novartis*, 290 F.3d at 586-87) ("If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false . . ."); *Johnson & Johnson – Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3rd Cir. 1994) ("A determination of literal falsity rests on an analysis of the message in context.").

In its summary judgment briefing, Brough Brothers did not focus solely on Fresh Bourbon's false statements in isolation, like the District Court did, but

3

instead explained how those statements were part of an overall misleading marketing scheme and pattern:

- On page 9 of its motion for summary judgment, Brough Brothers explained the manner in which Fresh Bourbon "repeatedly" held itself out as the "first" through multiple false statements as part of its marketing campaign.[1]

- On page 20 of its motion for summary judgment, Brough Brothers demonstrated that being the "first black owned distillery" was part of each party's "marketing strategy."[2]

- On page 23 of its motion for summary judgment, Brough Brothers explained how Fresh Bourbon's multiple promotional materials demonstrated a concerted effort to falsely claim to be the "first."[3]

- On page 7 of its response to Fresh Bourbon's motion for summary judgment, Brough Brothers explained that "Fresh Bourbon and its owners repeatedly held themselves out as being the 'first' in a large number of public, promotional statements…"[4]

While the summary judgment briefing before the District Court included discussions about the falsity of the individual statements, Brough Brothers also

---

[1] Motion for Summary Judgment, R. 73, Page ID# 1042.
[2] Motion for Summary Judgment, R. 73, Page ID# 1053.
[3] Motion for Summary Judgment, R. 73, Page ID# 1056.
[4] Brough Brothers' Response to Motion for Summary Judgment, R. 80, Page ID# 1770.

argued that Fresh Bourbon's entire marketing campaign consisted of publishing a series of statements that would lead any reasonable person to believe Fresh Bourbon was the "first" to accomplish different milestones, when the evidence makes clear it was not. For this additional reason, Brough Brothers has properly preserved its arguments.

Further, even if the argument was not preserved (and it was), this Court would nonetheless be permitted to consider it because it involves a pure question of law. *Caldwell v. Enyeart*, 72 F.3d 129 (6th Cir. 1995) (citations omitted) ("where an issue presents only a question of law we have been convinced on occasion to undertake a consideration of the newly presented issue, if [t]he issue raised is purely one of law requiring no new or amplified factual determination."). Here, the applicable standard the District Court should have applied in determining whether Fresh Bourbon's statements are "literally false," including explicitly or by necessary implication, is a question of law. Indeed, as the District Court and Fresh Bourbon have both recognized:[5] "Whether a statement is too ambiguous to be literally false is a matter of law to be decided by the Court." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prods. Inc.*, 2018 WL 7272047, at *3 (M.D. Tenn. Dec. 20, 2018); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 615 n.2 (6th Cir. 1999) (holding that

---

[5] Opinion and Order, R. 114, Page ID# 2500; Appellee Brief, Document: 22, Page: 34.

"determining what meaning(s) words facially convey requires no weighing of evidence.").

As Brough Brothers has argued, the District Court's failure to put Fresh Bourbon's statements in context and consider them as a whole, among other errors, resulted in the incorrect legal determination that Fresh Bourbon's statements were "too ambiguous" to be literally false. In other words, the District Court's consideration of each statement in isolation was an error of law that led to an erroneous interpretation of those statements. Accordingly, even if Brough Brothers had not preserved its argument, the Court could nonetheless consider it because it involves a purely legal question that can be resolved without weighing any factual evidence.

## II.   EVEN CONSIDERED SEPARATELY, EACH STATEMENT IS LITERALLY FALSE.

Here, by "necessary implication," the various statements made by Fresh Bourbon were literally false. As Brough Brothers explained in its Appellant Brief, the District Court did not even consider separate statements in the same publication in context (for example, the Lex 18 Article), let alone statements in the context of the overall marketing scheme, but instead addressed each as if it were the only statement that had been made. In fact, the District Court cited *Innovation Ventures*, 694 F.3d at 735–36, for the rule that "[t]he greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw

6

the apparent conclusion. . . the less likely it is that a finding of literal falsity will be supported"[6] without any mention of the preceding legal principle to which the cited statement applied: "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" In other words, the District Court referenced the discussion of the false by necessary implication doctrine, but then disregarded it.

Aside from claiming Brough Brothers did not preserve this argument, Fresh Bourbon has not challenged it in any other meaningful manner. In fact, one of the cases Fresh Bourbon cites makes clear that "the court should consider context" in evaluating whether a statement is false. *See Johnson & Johnson Vision Care Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) (cited on page 10 of Fresh Bourbon's Brief). In any event, as discussed below, each of the statements is false even when considered separately.

### A.    FRESH BOURBON WAS THE "FIRST BLACK-OWNED DISTILLERY IN KENTUCKY."

Fresh Bourbon does not address the undisputed fact that Mr. Edwards proposed the false language contained in the Kentucky Senate Resolution: "Fresh Bourbon Distilling Company is considered to be the first black-owned bourbon distillery in Kentucky" and "[t]he members of the Senate hereby honor Sean and

---

[6] Opinion and Order, R. 114, Page ID# 2500.

Tia Edwards and The Fresh Bourbon Distilling Company and acknowledge the importance of this being the first black owned distillery in Kentucky."[7]   Nor does Fresh Bourbon dispute that, regardless of who drafted the Resolution, Fresh Bourbon ratified the Resolution's false statements by republishing them on its website, thereby using them in commerce in violation of the Lanham Act.  *See, e.g.*, *Newborn Bros. Co., Inc. v. Albion Eng'ing Co.*, 481 F. Supp.3d 312, 349 (D.N.J. 2020) (defendant liable under the Lanham Act for arranging for third party to disseminate false statements); *United Fabricare Supply Co., Inc.*, No. CV-12-3755-MWF, 2012 WL 2449916, *3 (C.D Cal. June 27, 2012) (rejecting defendant's argument that Lanham Act liability cannot accrue as a result of republication of a third party's false statement).   In fact, Fresh Bourbon does not respond at all to Brough Brothers' argument that Lanham Act liability may attach as a result of republishing another person's false statement.

Rather than address the foregoing issues, Fresh Bourbon claims the Resolution's statement is not false because the term "distillery" is somehow unclear.[8]   Critically, Fresh Bourbon's argument directly contradicts Mr. Edwards' sworn testimony that the statements contained in the Resolution are false:

---

[7] Text message exchange (Jan. 28, 2020), R. 73-18, Page ID## 1247-48.

[8] Ironically, in an effort to advance this argument, Fresh Bourbon urges the Court to examine other statements contained in the Resolution, thus recognizing that the entirety of an advertisement should be considered in context when determining whether a particular statement is literally false.

Q. Whereas, 'Fresh Bourbon Distilling Company is considered to be the first Black-owned bourbon distillery in Kentucky.' That can't be true if you don't own a distillery, can it?

A. Correct. Yes. That's – that's right.

***

Q. Yes, a company. Did the company own a distillery at the time the resolution was passed?

A. No.

Q. And so that statement, we can agree, is incorrect?

A. Yes.

***

Q. And so in September, 2020, you could not have been the first Black-owned distillery in Kentucky because you didn't own a distillery, correct?

A. Correct. Yes.

Q. I understand you believe the state made this statement, right?

A. Yes.

Q. And even if it's false, it's because the state made it that doesn't fall to you as being responsible for that statement; is that what your belief is?

A. Correct.

Q. But in September, 2020, you printed this resolution and sent it to consumers, correct?

A. Yes.[9]

---

[9] Deposition of Sean Edwards, pp. 201-03; R. 77-1, Page ID## 1558-60.

9

In light of Mr. Edwards' admissions, there is no genuine dispute that Fresh Bourbon knowingly used a false statement it helped draft in order to market and sell its products in violation of the Lanham Act. These facts alone should end the Court's analysis with respect to the statements contained in the Resolution. Regardless, even if the Court were to consider Fresh Bourbon's conflicting argument with respect to the meaning of a distillery, the outcome would not change.

Notwithstanding Mr. Edwards' testimony, Fresh Bourbon relies on Tim Knittel's "expert" opinion that "the word 'distillery' has a number of different meanings depending on its context," as well as the fact that the United States Internal Revenue Code does not attempt to define the word "distillery."[10] Fortunately, however, the Kentucky Alcoholic Beverages Code does define "distillery,"[11] and Mr. Knittel conceded that Brough Brothers was the first black-owned "distillery" under this legal definition:

> Q.    Between Fresh Bourbon and Brough Brothers, who was the first to have or to own a distillery under the definition in KRS 241.010?

---

[10] Appellee Brief, Document: 22, Page: 21.
[11] KRS 241.010(28) (defining "distillery" as a "place or premises where distilled spirits are manufactured for sale, and which are registered in the office of any collector of internal revenue for the United States").

10

A.   Brough Brothers.[12]

While Fresh Bourbon attempts to muddy the waters through Mr. Knittel's other strained descriptions of a "distillery" in different "contexts," Fresh Bourbon cannot escape that: (1) Fresh Bourbon specifically marketed itself as the first black-owned distillery in Kentucky; (2) the Kentucky legislature has adopted a specific statutory definition of the term "distillery," which Mr. Knittel admits Brough Brothers first met; and (3) the false statement published by Fresh Bourbon was contained in a Kentucky legislative document that Mr. Edwards had helped draft.

Hoping to circumvent this issue, Mr. Knittel and Fresh Bourbon have attempted to create a moving target by crafting numerous, vague definitions of a "distillery" with the hope that one of these definitions might, in hindsight, apply to Fresh Bourbon's activity with Hartfield.   Indeed, Mr. Knittel conceded that his "expert opinion" is really just that the word "distillery" has no meaning at all:

> Q. If I register an LLC called Allison's Distillery with the Kentucky Secretary of State, do I then own a distillery?
>
> A. You do if you make the claim that you do.[13]

Even taking Mr. Knittel at his word, a distillery can be a distilled spirits plant (the federal definition); a place or premises where distilled spirits are manufactured via distillation, rectification, or bottling (the Kentucky Revised

---

[12] Deposition of Tim Knittel, R. 73-3, p. 131. Page ID# 1124.
[13] Deposition of Tim Knittel, R. 80-4, p. 150, Page ID# 1847.

Statutes definition); a distilled spirits plant registered with the Internal Revenue Service (again, the Kentucky Revised Statutes definition); or a location where bourbon was historically distilled (one of Knittel's definitions).    But, Fresh Bourbon was none of these things when it called itself a distillery:

> Q.    …Who had the first distilled spirits plant under the TTB's definition? You've got it in your report.
>
> A.    Brough Brothers.[14]
>
> ***
>
> Q.    Page 8 of your report, you say, 'Legally then, a 'distillery' does not require a still but does require 'a place or premise' where distilled spirits are manufactured via a distillation, rectification or bottling.'
>
> A.    Within the confines of this section of the report, which is limiting the definition of distillery to that in the Kentucky revised statutes, yes.
>
> Q.    Are you claiming that Fresh [Bourbon] was the first to own a place or premise where distilled spirits were being manufactured via distillation, rectification and/or bottling relative to Brough Brothers?
>
> A.    No.
>
> Q.    So you agree that under this definition, Brough Brothers was first?
>
> A.    Limiting to just this one definition, of which there are many potential definitions to be used in a marketing claim, yes, Brough Brothers had the first distillery as per the KRS.
>
> Q.    Okay. But you've also qualified this statement to say 'A place or premise where distilled spirits are

---

[14] Deposition of Tim Knittel, R. 73-3, p. 126, Page ID# 1119.

12

manufactured' by 'distillation, rectification and/or bottling,' even if it doesn't have a still.

And my question is: Looking just at this sentence at the top of page 8, you agree that Brough Brothers was first?

A.    Within that limited definition, yes.[15]

***

Q.    To your knowledge, did either Fresh Bourbon or Brough Brothers revive a historic brand?

A.    Not to my knowledge.

Q.    To your knowledge, did either Fresh Bourbon or Brough Brothers revive a former property that was used as a distillery historically the way that Castle & Key did?

A.    Not to my knowledge.

Q. [Y]ou are not claiming that Fresh Bourbon was the first to have a distillery because they purchased a property to revive a historic building that was a distillery, are you?

A.    That is correct.[16]

Mr. Knittel has acknowledged that under recognized legal definitions and definitions he himself crafted, Fresh Bourbon was not a "distillery" under any use of the term.  In fact, even under Mr. Knittel's imaginary, alternative description of a "distillery" as a place merely where "the intent exists to perform the work of manufacturing beverage spirit alcohol in the future at that location,"[17] Brough

---

[15] Deposition of Tim Knittel, R. 80-4, pp. 134-35, Page ID## 1831-32.
[16] Deposition of Tim Knittel, R. 80-4, p. 140, Page ID# 1837.
[17] Appellee Brief, Document: 22, Page: 20.

Brothers was also the first to meet this criteria. Indeed, as Victor Yarbrough explained, well-before Fresh Bourbon was involved with Hartfield in 2018, Victory Global had started the process of "creating a distillery" by taking steps such as securing a location, sourcing raw materials, and testing flavor profiles that would ultimately be used in its products once its distillery was operational.[18] In other words, even if Mr. Knittel's definition was credible, Brough Brothers had the "intent" to manufacture bourbon at its "distillery" before Fresh Bourbon and also took various measures to carry out this intent before Fresh Bourbon.

Notwithstanding Mr. Knittel's efforts to create confusion, the word "distillery" has a concrete, statutory meaning, and that is exactly why Fresh Bourbon heavily employed the term in advertising and promotional statements. Fresh Bourbon did not want the public to believe it was simply purchasing bourbon and bottling products through a third party, was merely a label placed on a bottle filled by someone else, or was making "contributions" at another entity's facility where spirits were made. To the contrary, Fresh Bourbon wanted the public to believe it was the first black-owned "distillery" in the Commonwealth of Kentucky. Mr. Knittel's intentional use of ambiguity and fictitiousness cannot create a loophole through which Fresh Bourbon can credibly claim its statements were true. Here, there is nothing unclear about the message that was conveyed by

---

[18] Deposition of Victor Yarbrough, R. 73-5, pp. 15-18, Page ID## 1136-38.

14

Fresh Bourbon to the general public, nor is there any question as to what the intended audience would reasonably understand the "first black-owned distillery in Kentucky" to mean.

### B.    FRESH BOURBON IS THE "[F]IRST BLACK-OWNED BOURBON DISTILLERY COMING TO DOWNTOWN LEXINGTON."

The District Court determined the statement that the "first black-owned bourbon distillery coming to Lexington" (and other similar statements) was not false because Brough Brothers presented no evidence that another black-owned distillery was in Lexington before Fresh Bourbon.[19]  In its Appellant Brief, Brough Brothers extensively explained why the District Court erred in reaching its erroneous interpretation, including that when the article is read in its entirety, it is clear that the message conveyed to the public was that the first black-owned distillery in Kentucky (Fresh Bourbon) was starting another location in Lexington – *i.e.*, coming to Lexington.[20] This message, of course, is false because Brough Brothers is plainly the first African American owned distillery in Kentucky, as Fresh Bourbon and its expert conceded.  Notwithstanding Brough Brothers' thorough argument with respect to this statement, Fresh Bourbon has failed to address the issue in its Appellee Brief.  Accordingly, Brough Brothers' interpretation of what the message conveyed is uncontested.

---

[19] Opinion and Order, R. 114, Page ID# 2503.
[20] Appellant Brief, Document: 18, Pages: 20-21.

**C.** **"THERE HAD BEEN NO AFRICAN AMERICANS PRODUCING BOURBON THAT WEREN'T SLAVES," AND FRESH BOURBON IS "THE FIRST BOURBON DEVELOPED GRAIN TO GLASS BY AFRICAN AMERICANS IN THE STATE OF KENTUCKY."**

The District Court determined that these two statements were, at most, ambiguous, because the terms "produce" and "develop" are not equivalent to "distilling" bourbon.[21]  In arguing these representations were not false, however, Fresh Bourbon claims "the evidence in this case shows that the Fresh Bourbon team began *distilling* its unique product using the Hartfield & Company facility in early 2018."[22] Fresh Bourbon made this same argument to the District Court in opposing Brough Brothers' motion for summary judgment.[23]

Based on Fresh Bourbon's own description of its activities, the District Court erred in concluding that "producing" and "developing" bourbon carry different meanings than "distilling" it – clearly, Fresh Bourbon has used and continues to use these terms interchangeably.  Indeed, in addition to Fresh Bourbon's characterization of its Hartfield activity as "distilling bourbon," Fresh Bourbon's references to "distill" and "distillery" in the Lex 18 News article further demonstrate the term "produce" contained in the same article carries the same

---

[21] Opinion and Order, R. 114, Page ID## 2503-04.
[22] Appellee Brief, Document: 22, Page: 19.
[23] Fresh Bourbon's Response to Motion for Summary Judgment, R. 77, Page ID# 1350.

16

meaning.[24]   And, once again, Fresh Bourbon's advertisements were made in the specific context of the spirits industry, and the process through which bourbon comes to exist is commonly known as distilling.

As Fresh Bourbon does not dispute that "producing" and "developing" bourbon are the same as "distilling" it, only one question needs to be answered: did Fresh Bourbon "distill" bourbon before Brough Brothers? If not, then the statements that Fresh Bourbon's representatives were the first African Americans, other than slaves, to "produce" bourbon and that Fresh Bourbon was the first bourbon "developed" grain to glass by African Americans in Kentucky, would both necessarily be false.   Thus, while Fresh Bourbon focuses solely on the testimony of Brough Brothers' expert regarding whether other African Americans had historically distilled Kentucky bourbon before Fresh Bourbon did, its argument skips over the fact that Brough Brothers distilled bourbon before Fresh Bourbon did.

Perhaps the clearest example that Fresh Bourbon did not "produce" or "distill" bourbon through the Hatfield arrangement is the discrepancy between Fresh Bourbon's product labeling and its commercial statements.   Indeed, if Fresh Bourbon had truly made its own product, then surely the bourbon it sold would have stated as much.   Yet, Fresh Bourbon's product expressly stated on each label

---

[24] Lex 18 News article, R. 73-11, Page ID## 1196-204; Fresh Bourbon's website, R. 73-12, Page ID# 1207.

17

that it was "*distilled* and bottled by [Hartfield] *for Fresh Bourbon Distilling Company*."[25]    In other words, Fresh Bourbon claims to have "distilled" or "produced" a product that unambiguously stated on its bottle that it was distilled by another entity "for" Fresh Bourbon.

Fresh Bourbon's labeling could not have lawfully said otherwise. Fresh Bourbon could not have represented on its labels that it "distilled," "made" or "produced" the product because such a statement would be both false and illegal under federal regulations, which is why Fresh Bourbon's product was sold under Hartfield's permit.[26]  Indeed, one cannot legally "distill" liquor – as Fresh Bourbon alleges it did in 2018 – without the appropriate licenses and regulatory approvals. *See* KRS 243.020(1) ("[a] person shall not do any act authorized by any kind of license with respect to the manufacture, storage, sale, purchase, transporting, or other traffic in alcoholic beverages unless the person holds or is an independent contractor, agent, servant, or employee of a person who holds the kind of license that authorizes the act[.]"); 27 C.F.R. § 1.21(a) ("No person, except pursuant to a basic permit issued under the Act, shall . . . Engage in the business of distilling distilled spirits . . ."). Fresh Bourbon, of course, did not obtain the required licenses to operate a distillery or distill spirits until October 2022 – two years after

---

[25] Brough Brothers' Response to Motion for Summary Judgment, R. 73-21, Page ID# 1268 (emphasis added).
[26] Deposition of Andrew Buchanan, R. 80-2, pp. 50-51, Page ID## 1797-98.

18

Brough Brothers had obtained its licenses and 22 months after Brough Brothers had filled its first barrel.[27]  Accordingly, Fresh Bourbon could not have truthfully represented that it "made," "produced," "developed," or "distilled" bourbon in Kentucky before Brough Brothers, which, again, is why Fresh Bourbon's bottles disclose that the product was distilled by another entity, Hartfield.

Nevertheless, if legally "distilling" bourbon was somehow a different process than "producing" or "developing" it, Fresh Bourbon still would not have been the first black-owned company to do so.  Indeed, if Fresh Bourbon's activities in connection with the Hartfield contract could have constituted making, producing, or developing bourbon, then the same is true of Victory Global's vertically integrated business model though which it began to "develop" its product by securing a location and sourcing raw materials, testing flavor profiles, and creating a brand with the end goal of operating a legal distillery – all before Hartfield and Fresh Bourbon entered into their relationship.[28]

### D.    FRESH BOURBON EMPLOYED KENTUCKY'S "FIRST AFRICAN AMERICAN MASTER DISTILLER IN KENTUCKY SINCE SLAVERY."

Finally, Fresh Bourbon continues to stand behind its false statement that Michael Adams was the "first African American Master Distiller in Kentucky

---

[27] Louisville Metro DCR Distiller's License No. LIC-ABL-20-00099, R. 73-8, Page ID## 1164-73; Deposition of Victor Yarbrough, R. 73-5, pp. 23-24, Page ID## 1142-43; Fresh Bourbon's Response to Brough Brothers' Interrogatory No. 10, R. 73-10, Page ID# 1186.

[28] Deposition of Victor Yarbrough, R. 73-5, pp. 15-18, Page ID## 1136-38.

19

since slavery."[29]  According to Fresh Bourbon, the evidence "reflects that Mr. Adams oversaw and participated in all aspects of the distillation and production of Fresh Bourbon using the facilities at Hartfield & Company in 2018."[30]  But, this does not mean Mr. Adams was a "Master Distiller" – a term Fresh Bourbon selectively used in its marketing – nor is it the entirety of what the evidence reflects.  Instead, the evidence also reflects that Mr. Adams had no experience with distilling bourbon prior to working with Hartfield,[31] did not own a distillery,[32] and did not have decades of experience.[33] He was a full-time bank employee with an interest in spirits who went to work for Fresh Bourbon.[34]  Even the testimony of Andrew Buchanan that Fresh Bourbon cites makes clear Mr. Adams was not a master distiller:  "[Mr. Adams] had *some idea* of how distillation happened, separation of chemicals and all that kind of stuff."[35] In fact, despite conflicting testimony from Mr. Edwards,[36] Mr. Buchanan acknowledged that Mr. Adams *was not* the Master Distiller at Hartfield; instead he was training to be a Master Distiller

---

[29] Fresh Bourbon's Motion for Summary Judgment, R. 70-1, Page ID## 722-23.

[30] Appellee Brief, Document: 22, Page: 23.

[31] Deposition of Andrew Buchanan, R. 80-2, pp. 79-82, Page ID## 1813-16.

[32] Deposition of Andrew Buchanan, R. 80-2, pp. 79-82, Page ID## 1813-16. Michael Veach Report, R. 73-2, p. 4, Page ID# 1103.

[33] Deposition of Andrew Buchanan, R. 80-2, pp. 79-82, Page ID## 1813-16.

[34] Deposition of Andrew Buchanan, R. 80-2, pp. 79-82, Page ID## 1813-16.

[35] Appellee Brief, Document: 22, Page: 21, citing Deposition of Andrew Buchanan, R. 70-6, Page ID# 849 (emphasis added).

[36] Deposition of Sean Edwards, R. 70-2, pp. 60-61, Page ID# 747.

for when Fresh Bourbon eventually opened up its own location.[37] In other words, Mr. Buchanan could not have been a Master Distiller during the time Fresh Bourbon was marketing him as such.

Further, regardless of the fact that Mr. Adams eventually learned the distillation process, Brough Brothers' expert, Mr. Veach, made clear that the limited experience Mr. Adams eventually gained by working with Hartfield did not meet the qualifications necessary to qualify him as a "Master Distiller"; namely, Mr. Adams did not have "20+ years of experience operating a distillery" or "own his … own distillery."[38]  Accordingly, even if the parties dispute the implications of Mr. Adams learning how to distill bourbon, there remains an issue of fact as to whether this knowledge and participation in the distillation process is sufficient to truthfully claim that he was a "Master Distiller" within the criteria provided by Brough Brothers' expert.

## III. **BECAUSE THE STATEMENTS ARE LITERALLY FALSE, DECEPTION IS PRESUMED.**

Fresh Bourbon notes that a party relying on statements that are literally true yet misleading cannot obtain relief by arguing how consumers would react, but instead, must show how consumers actually do react.[39]  Brough Brothers, however, has never argued that Fresh Bourbon's statements are true; instead, it has

---

[37] Deposition of Andrew Buchanan, R. 70-6, pp. 82-83, Page ID# 850.
[38] Michael Veach Report, R. 73-2, p. 3, Page ID# 1102.
[39] Appellee Brief, Document: 22, Page: 30.

21

consistently argued that the statements are literally false. And, because Brough Brothers has established Fresh Bourbon's statements are literally false, Brough Brothers need not prove actual deception. *Wysong Corporation v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018)). As stated by this Court, "[w]here statements are literally false, a violation may be established without evidence that the statements actually misled consumers." *American Council of Certified Podiatric Physicians and Surgeons,* 185 F.3d at 613; *Time Warner Cable*, 497 F.3d at 158 (citing *Novartis*, 290 F.3d at 586-87) ("If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required.").

## IV.   **THE FALSE STATEMENTS ARE MATERIAL.**

According to Fresh Bourbon, "[b]y failing to show that Fresh Bourbon's statements actually deceived a substantial portion of the intended audience, Brough Brothers also failed to show that the statements were material and would likely influence the deceived customer's purchasing decisions."[40] Just as the District Court did, Fresh Bourbon is conflating the Lanham Act's deception element with the separate element of materiality, each of which has distinct evidentiary requirements. *Louisiana-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 335 F. Supp. 3d 1002, 1015 n.2 (M.D. Tenn. 2018), *aff'd*, 928 F.3d 514 (6th Cir. 2019)

---

[40] Appellee Brief, Document: 22, Pages: 31-32.

22

(citations omitted) ("Materiality is not part of the Court's inquiry into deception, but is instead considered under the third element of a Lanham Act false advertising claim, the statement is material in that it will likely influence the deceived consumer's purchasing decisions").

Fresh Bourbon's reference to "actual deception" is a red herring in two respects. First, as explained herein, Brough Brothers was not required to demonstrate "actual deception" because the statements in issue were literally false. Second, "actual deception" is irrelevant when examining whether Fresh Bourbon's literally false statements are material. Instead, the proper materiality analysis turns on whether Fresh Bourbon's statements "will *likely* influence the deceived consumer's purchasing decisions." *Id*. (emphasis added); *see also Am. Council of Certified Podiatric Physicians*, 185 F.3d at 613. Here, there is no question that Fresh Bourbon's statements were material for the reasons Brough Brothers has already briefed, including: (1) Fresh Bourbon made repeated, calculated efforts to market itself as the "first"; and (2) Brough Brothers' expert, Mr. Veach, explained that many bourbon brands "have attempted to break into the market by marketing themselves as the 'first'," evidencing that such references are important to the general public.[41]

---

[41] Appellant Brief, Document: 18, Pages: 36-42.

23

Clearly, portraying itself as the "first" was a calculated strategy employed by Fresh Bourbon in order to draw customers to a "unique" characteristic of its products. Fresh Bourbon now tries to downplay its own marketing language, claiming the "story" it was selling to the public was its unique bottling and ingredients.[42] Plainly, however, the "story" had nothing to do with the bottle or the ingredients. Instead, Fresh Bourbon's repeated characterization of itself as the "first" through numerous publications and marketing materials demonstrates that the false statements were the "story" Fresh Bourbon was telling in order to influence customer purchasing decisions. *See Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC*, 519 F. Supp. 3d 839, 854 (D. Or. 2021) (holding that a defendant's marketing as the "first and only USDA certified organic hard seltzer" was material because "[p]resumably, [the defendant] would not highlight this feature of its product in its advertising unless it believed that doing so would promote sales.").

At a minimum, Brough Brothers has presented more than sufficient evidence for a jury to find that Fresh Bourbon's statements were material. *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 (1st Cir. 2002) ("a rational factfinder could conclude that consumers, especially experienced ones like retail stores, *would likely be influenced* in their purchasing decisions by labeling

---

[42] Appellee Brief, Document: 22, Page: 34.

that gave the false impression that the garments contained virgin cashmere.") (emphasis added). Indeed, if the Court were to accept Fresh Bourbon's argument that there is a genuine question as to "which of [its] statements actually affects the consumer's decision to purchase a bottle of whiskey,"[43] that necessarily means there is a factual issue to be resolved by the jury after a full presentation of documentary evidence and witness testimony. *See id.*; *Mahindra & Mahindra Ltd. v. FCA US LLC*, 2021 WL 323253, at *8 (E.D. Mich. Feb. 1, 2021) ("Defendant has pointed to several instances where Plaintiffs considered the advantages of including reference to the military grade, which concern the relevant consumer market . . . The Court thus finds that Defendant has presented sufficient evidence to create a genuine issue of disputed fact as to materiality.").

## CONCLUSION

For the foregoing reasons, Brough Brothers requests that the Court: (1) reverse the District Court's Judgment; (2) direct the entry of summary judgment in favor of Brough Brothers as to Fresh Bourbon's liability for false advertising in violation of the Lanham Act; (3) direct the District Court to declare that Brough Brothers is the first black-owned bourbon distillery in Kentucky; and (4) remand the case to the District Court to conduct a trial on Brough Brothers' entitlement to disgorgement, monetary damages, attorneys' fees, a permanent injunction, and any

---

[43] Appellee Brief, Document: 22, Page: 34.

other remedies permitted by the Lanham Act.  In the event the Court determines Brough Brothers is not entitled to partial summary judgment on liability, Fresh Bourbon's motion for summary judgment should nonetheless have been denied by the District Court. Thus, alternatively, Brough Brothers requests that the Court reverse the District Court's Judgment and remand the case for a full trial on Brough Brothers' Lanham Act claim.

Respectfully submitted,

*/s/ Brian M. Johnson*
Brian M. Johnson
Logan J. Mayfield
DICKINSON WRIGHT PLLC
300 W. Vine Street, Suite 1700
Lexington, KY  40507
Phone:  (859) 899-8704
Facsimile: (844) 670-6009
BJohnson@dickinsonwright.com
LMayfield@dickinsonwright.com
*Counsel for Appellant*
*Victory Global, LLC*

27

## **CERTIFICATE OF COMPLIANCE**

1.      In accordance with Fed. R. App. P. 32(g), I certify that this brief is written in a proportionately spaced, 14-point Times New Roman font, and contains 5,777 words, exclusive of the material not counted under Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14 point font.

*/s/ Brian M. Johnson*
*Counsel for Appellant*
*Victory Global, LLC*

28

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DESCRIPTION | PAGE ID# RANGE |
|---|---|---|
| 70-1 | Fresh Bourbon's Motion for Summary Judgment | 717-730 |
| 70-2 | Deposition of Sean Edwards | 731-767 |
| 70-6 | Deposition of Andrew Buchanon | 828-868 |
| 73 | Brough Brothers' Motion for Partial Summary Judgment | 1034-1060 |
| 73-2 | Michael Veach Report | 1098-1104 |
| 73-3 | Deposition of Tim Knittel | 1105-1126 |
| 73-5 | Deposition of Victor Yarbrough | 1131-1149 |
| 73-8 | Louisville Metro DCR Distiller's License No. LIC-ABL-20-00099 | 1163-1173 |
| 73-10 | Fresh Bourbon's Response to Brough Brothers' Interrogatory No. 10 | 1179-1194 |
| 73-11 | LEX 18 News article | 1195-1204 |
| 73-12 | Fresh Bourbon's website | 1205-1210 |
| 73-18 | Text message exchange | 1246-1248 |
| 77 | Fresh Bourbon's Response to Motion for Partial Summary Judgment | 1348-1356 |
| 77-1 | Deposition of Sean Edwards | 1357-1668 |
| 80 | Brough Brothers' Response to Motion for Summary Judgment | 1764-1787 |
| 80-2 | Deposition of Andrew Buchanan | 1792-1816 |
| 80-3 | Deposition of Tim Knittel | 1817-1820 |
| 80-4 | Deposition of Tim Knittel | 1821-1848 |
| 114 | Opinion & Order | 2495-2512 |

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Brian M. Johnson*
*Counsel for Appellant*
*Victory Global, LLC*